COUNTY OF HILL, RESPONDENT, v. COUNTY OF LIBERTY, APPELLANT.

(No. 4,886.)

(Submitted November 4, 1921. Decided December 19, 1921.)

[203 Pac. 500.]

*New Counties—Delinquent Taxes—Ownership—Liens — Statutory Construction.*

Statutes—How Language to be Construed.
  1. The language of a statute must be construed in accordance with its usual and ordinary acceptation, with a view to giving vitality to and making operative all provisions of the law and accomplishing the intention of the legislature when ascertainable.
New Counties—Delinquent Taxes—Property of New County.
  2. Under the New Counties Act (Chap. 226, Laws of 1919), providing for the apportionment of property and debts between a new and the old county or counties out of which it is created, taxes upon property situated in that portion of the parent county or counties incorporated in the new county, which are delinquent upon creation of the new one or were delinquent and remain unpaid for previous years, are collectible by and belong to the new county. (See Opinion on Motion for Rehearing.)
Same—When New County Fully Created.
  3. Under section 4 of Chapter 226, Laws of 1919, a new county is not fully created until the expiration of ninety days after the date of the filing with the secretary of state of the certified copy of the resolution of the board of county commissioners of the parent county declaring it duly formed as a county.
Same—Delinquent Taxes—When Property of Parent County.
  4. Delinquent taxes paid on property incorporated in a new county, in the interim between the passing of the resolution by the board of commissioners of the parent county and the expiration of the ninety-day period after its filing with the secretary of state, belong to the parent and not to the new county.

Taxation—When Delinquent Taxes Become Lien on Property.
  5. Under Revised Codes, sections 2601, 2602, delinquent taxes do not become a lien on the property against which originally assessed, immediately on delinquency, but on the first Monday of March in each year.

*Appeal from District Court, Hill County; Charles A. Rose, Judge.*

ACTION by the County of Hill, Montana, against the County of Liberty, Montana. From a judgment for plaintiff, defendant appeals. Reversed and remanded, with directions.

*Mr. B. R. McCabe,* submitted a brief, and *Messrs. Norris, Hurd, Rhoades & Hauge,* a supplemental brief, in behalf of Appellant; *Mr. McCabe* and *Mr. Edwin L. Norris* argued the cause orally.

*Mr. Max P. Kuhr,* for Respondent, submitted a brief and one in reply to Appellant's supplemental brief, and argued the cause orally.

MR. COMMISSIONER SPENCER prepared the opinion for the court.

This cause was submitted upon an agreed statement of facts which shows the creation of Liberty county, on November 8, 1919, pursuant to the provisions of Chapter 226, Laws of the Sixteenth Legislative Assembly, 1919, and comprising in part territory theretofore within the county of Hill. Under the statute taxes became delinquent at 6 o'clock P. M., November 30, 1919. The agreed statement submitted for determination the single question, "To whom did such delinquent taxes belong?" Judgment was for plaintiff and from it defendant appealed.

We think it unnecessary to go further than the statute itself for a construction of its provisions. Section 7 provides among other things: "Delinquent taxes due to the old county against property situated in the new county shall be transcribed in and collected by the new county." The language of a statute must be construed in accordance

[1] with its usual and ordinary acceptation, having in view the giving of vitality to and making operative all provisions of the law, if possible, and accomplishing the intention of the legislature when ascertainable.   (Secs. 7875, 7876, 8070, Rev. Codes; *State ex rel. Gillett* v. *Cronin,* 41 Mont. 293, 296, 109 Pac. 144; *State ex rel. McGowan* v. *Sedgwick,* 46 Mont. 187, 190, 127 Pac. 94; *Lerch* v. *Missoula etc. Co.,* 45 Mont. 314, Ann. Cas. 1914A, 346, 123 Pac. 25; *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 190, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833.)

Chapter 226 is an enactment governing the creation of new [2] counties, comprehensive in its terms, and providing for the apportionment of the property and debts of the new and old counties which are affected.   In substance, it declares that after creation a valuation shall be placed upon property (certain kinds of which are enumerated) included within the old and new counties; indebtedness of the old shall be computed, and after apportionment thereof upon the basis stated in the law and settlement by the new county of its proportion, the property situated within the confines of the new county shall belong to it.   (Chap. 226, sec. 7, *supra.*)

No sufficient reason appears to indicate any different ownership of delinquent taxes.   Delinquent taxes become a lien upon the property against which they were originally levied immediately upon delinquency, and the statute provides a procedure for the collection of the same by sale.   (Rev. Codes, secs. 2616 *et seq.*)   After property was transferred from Hill to Liberty county, by reason of creation of the latter, such transfer carried with it the lien for taxes, which became enforceable only by Liberty county.   No county is authorized to levy an assessment against or collect taxes upon property situated in another, because location and ownership determine the right to collect taxes in any event.   Liberty county was the real party in interest for the collection of delinquent taxes upon property within its boundaries by reason of its *situs.*   If it owned the right to collect, it owned the fruits of that right.   Section 9

of Chapter 226 seems by implication at least to fortify the contention of defendant; for it provides that all proceedings by the parent county, prior to the creation of the new county, for the collection of taxes, shall inure to the benefit of the new county in so far as applicable to property situated therein.

We think the law, viewed as a whole, justifies the conclusion that, when the legislature said that delinquent taxes upon property situated within the new county should be transcribed in and collected by that county, its undoubted intent was they should also be owned by it.

We therefore recommend that the judgment be reversed and the cause remanded to the district court of Hill county, with directions to dismiss the complaint.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment is reversed and the cause remanded to the district court of Hill county, with directions to dismiss the complaint.

*Reversed.*

---

ON MOTION FOR REHEARING.

(Submitted January 6, 1922. Decided January 16, 1922.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

In his motion for a rehearing, counsel for plaintiff complains [3] that the opinion prepared by Commissioner Spencer is misleading, in that it proceeds upon the assumption that Liberty county was created on November 8, 1919, whereas the date of its creation was February 12, 1920. Upon examination of the agreed statement of facts, we find that this complaint is well founded. It is recited therein that on November 8, 1919, the board of county commissioners of Hill county, from which the greater part of the territory included in Liberty county was taken, and which for this reason may for

present purposes be designated as the parent county, passed the resolution required by section 4 of the New Counties Act (Chap. 226, Laws of 1919, p. 568), but did not cause a certified copy of it to be filed with the secretary of state until November 13. The section of the Act referred to declares: "Ninety (90) days from and after the date of such filing said new county shall be deemed to be fully created, and the organization thereof shall be deemed completed." The statement in the commissioner's opinion should therefore have been that the county was created on February 12, 1920. It is important that this provision should be given effect, because the jurisdiction of the parent county continues for all purposes until the expiration of the ninety days after the copy of the resolution is filed with the secretary of state, and also because, though the officers of the new county have been declared elected, they have no authority whatever to assume their respective offices or to discharge any of the functions pertaining to them until the expiration of that time. Whatever is properly done in the meantime by the authorities of the parent county in the administration of its affairs is as valid for all purposes and to the same extent as if no steps had been taken to create the new county. Furthermore, the date at which the jurisdiction of the authorities ceases for all purposes is thus made definite.

[4] It is true, as stated by the commissioner, that taxes delinquent at the time the new county is created and organized belong to the new county, and this statement includes all taxes still due and uncollected at the time the new county comes into being, not only for the year immediately prior to its creation, but for all previous years. Yet, since the authorities of the parent county have jurisdiction to discharge their duties until the expiration of the ninety days, any delinquent taxes which may be paid during that time are properly paid to the treasurer of the parent county, and belong to it.

These remarks dispose of another complaint by counsel, that the commissioner's opinion is silent as to who has authority to collect delinquent taxes between the date of the filing by the

board of county commissioners with the secretary of state of the certified copy of its resolution and the date when the new county comes into being. Of course, since the parent county is to function in the meantime just as it did before, whatever it does in this behalf it does as a county, and since delinquent taxes are payable at any time, its treasurer is the person authorized to collect them. Section 7 of the New Counties Act, *supra,* declares: "Delinquent taxes due to the old county against property situated in the new county shall be transcribed in and collected by the new county." In so far as this provision is in conflict with section 2850 of the Revised Codes, to which counsel calls attention, it takes its place and prescribes the right of the new county with reference to delinquent taxes.

Our attention is also called to a statement made in the opinion [5] that "delinquent taxes become a lien upon the property against which they were originally levied immediately upon delinquency." This statement is not accurate, because by the statute (secs. 2601, 2602, Rev. Codes) it is declared that taxes become a lien upon the property, real or personal, against which they are assessed, as of the first Monday of March of each year.

With these corrections and explanations the commissioner's opinion is made clear and sufficiently explicit to show that the conclusion announced therein is fully warranted by the statute. Therefore no useful purpose would be subserved by ordering a rehearing. The motion is accordingly denied.

*Rehearing denied.*

ASSOCIATE JUSTICES COOPER. HOLLOWAY and GALEN concur.