RACINE COUNTY and another, Plaintiffs and Appellants, v. PLOURDE and another, d/b/a STURTEVANT AUTO SALVAGE, Defendants and Respondents: TOWN OF MT. PLEASANT, Third-party Defendant.*

*February 26—April 9, 1968.*

* Motion for rehearing denied, with costs, on June 4, 1968.

For the appellants there was a brief and oral argument by *Edward A. Krenzke,* corporation counsel.

For the respondents there was a brief by *Murphy, Huiskamp, Stolper, Brewster & Desmond* of Madison, and oral argument by *F. A. Brewster.*

BEILFUSS, J.   The validity of the Racine county zoning ordinance, constitutionally or otherwise, is not at issue on this appeal.  The sole question is the construction of the ordinance as it applies to the operations of the defendants-landowners.

Racine county has a seven step zoning ordinance ranging from Residential "A" to Agricultural District.  The sections of the ordinance principally involved in this litigation are secs. 7.020 (A) (3) and 7.018 (A) (3), and deal with Commercial District "B" and the Agricultural District.

Sec. 7.020 (A) (3) provides:

*"Commercial District 'B'*
"(A)  Use.  In the Commercial District 'B' no building or premises shall be used . . . except for one or more of the following specified uses:
". . .
"(3)  Business uses, retail and wholesale, except the storage of old iron, rags, bottles and junk, automobile wrecking yards and such uses as are hazardous and uses which are noxious by reason of the emission of smoke, gas, dust, noise or odors."

Sec. 7.018 (A) (3) provides:

*"Agricultural District*
"(A)  Use.  In the Agricultural District no building or premises shall be used . . . *for any* of the following uses:
". . .
"(3)  Automobile wrecking yards unless located at least 750 feet from any public road or highway, . . ."

The ordinance does not specifically define "automobile wrecking yard," nor have we found any regulatory statute that helpfully defines automobile wrecking yard, automobile salvage yard, or automobile junkyard.

The first 300 feet of the defendants' property is zoned Commercial "B".  The remaining portion of the premises is zoned "Agricultural."

Mr. Kockelman, a land use expert and a city and regional planner, testified that an automobile wrecking yard is a refinement of a junkyard and that a junkyard involves three operations:

(1) The collection and storage of material;
(2) dismantling and resale;
(3) scrapping and destruction.

It is apparent that the defendants' operation closely follows the description of junkyard activities. Wrecked, worn out, abandoned and otherwise inoperable motor vehicles are purchased and brought to the defendants' yard. A few are sold as used cars or for rebuilding, a few have little salvage value and are taken to the rear of the yard for immediate scrapping, but the great majority are stored in an area from 90 feet back of the service road to 800 feet back of the service road and dismantled in varying degrees for salvageable parts.

The trial court was of the opinion that the operations of the defendants were separable and that only the final scrapping operation was regulated by the ordinance. In its examination of the zoning ordinance as a whole, the trial court concluded the purpose of the ordinance provisions in question was to eliminate uses objectional because of noise, odors, dust, gas, smoke, or fumes. The court found that none of these objections applied to the storage and dismantling of the inoperable automobiles. Consequently, the court determined the term "automobile wrecking yard" as used in the ordinance applied only to the final stage of the operation, the scrapping and destruction, and not to the storage of inoperable vehicles and salvage of useable parts.

It appears from the record that it is only when the automobile reaches the third stage of the salvage operation that noisome odors, smoke and noise are apparent. Consequently, the dominant objection that can be levied against the storage and dismantling of the inoperable vehicles is that it creates an unsightly condition. The

testimony was that in the storage and salvage area the automobiles were in various stages of dismantlement and discarded parts were strewed about in disorder to the extent that it was hard to walk through the area.

Both respondents and the trial court point to the final paragraph of sec. 7.020 (A) of the ordinance under consideration as establishing the general purpose of the section. That paragraph provides:

"All permissive uses listed above and any trade, business, industry, or purpose of any kind shall be prohibited in the Commercial District B which is noxious and offensive by reason of the emission of odor, dust, smoke, cinders, fumes, noise, vibrations, refuse matter or water-carried waste, so as to be detrimental to the public health, safety, comfort, or general welfare."

Clearly some of the purposes of the ordinance are indicated by this paragraph. However, simply because sec. 7.020 (A) has a general "catch-all" provision directed primarily at problems of atmosphere pollution, waste accumulation and noise, it does not follow that the ordinance is limited to a prohibition of only those evils.

Sub. (3) of sec. 7.020 (A) is not limited by the final paragraph of the ordinance. Sub. (3) itself demonstrates one of the purposes of the ordinance is to avoid the unsightly conditions that accompany salvage yards. This subsection of the Commercial "B" ordinance provides that business uses, both retail and wholesale, are permitted "except the storage of old iron, rags, bottles and junk, [and] automobile wrecking yards." It further provides "such uses as are hazardous and uses which are noxious by reason of emission of smoke, gas, dust, noise or odors" are also excepted. By the terms of the ordinance, uses which are "hazardous" are classified separately from the "storage of old iron, rags, bottles and junk, [and] automobile wrecking yards." Also, uses which are "noxious by reason of emission of smoke, gas, dust, noise or odors," are classified apart from the "storage of old iron, rags,

bottles and junk, [and] automobile wrecking yards," and separate from uses which are "hazardous." Stated another way, sub. (3) of the ordinance promulgates the three following types of prohibitions:

1. The storage of old iron, rags, bottles and junk, and automobile wrecking yards.

2. Uses which are hazardous.

3. Uses which are noxious because of the emission of smoke, gas, dust, noise or odors.

The ordinance does prohibit storage of old iron, rags and junk; the ordinance does not require the storage of items must also be hazardous or offensive by reason of smoke, etc. The storage of old iron is prohibited whether or not it is hazardous or noxious. The storage of rags, bottles and junk is not permitted in Commercial "B" whether or not it is hazardous or noxious to do so, nor whether such storage is noxious because of the emission of odors, smoke, dust, gas or noise. It follows that noisome and noisy and hazardous junk storage yards are not the sole aim of the ordinance. All junkyards are prohibited by sub. (3). Whether an automobile wrecking yard is or is not hazardous or noxious by reason of smoke, etc., is not determinative. An automobile wrecking yard is prohibited whether or not it is hazardous or noxious. It would be unreasonable to conclude the ordinance prohibits the storage of "old iron" but not the storage of dilapidated, smashed, and partially dismantled automobiles.

Another section of the zoning ordinance amply demonstrates the intention of the use of the term "wrecking" in the ordinance. Sec. 7.019 (A) prescribing the uses allowed in the district referred to as "Commercial District 'A'," which is a more refined district than "Commercial District 'B'," has a subsection (37) which regulates filling stations. Under sub. (2) of this subsection there is a further sub. (iv) which provides that no filling station

building or premises shall be used for "[t]he wrecking of vehicles or the storage of parts, salvaged from such operation." This phraseology indicates the word "wrecking" is used in the sense of dismantling and salvaging of parts. The word "such" refers to the operation of "the wrecking of vehicles." The ordinance clearly uses the term "wrecking" throughout the ordinance to express this conception of the entire operation of an automobile salvage yard.

To further support the construction placed upon the ordinance by the appellants is the case of *Sohns v. Jensen* (1960), 11 Wis. 2d 449, 459, 105 N. W. 2d 818. In speaking of the same Racine county ordinance which is under review here, this court said:

> "*The concept of the automobile-wrecking yard business includes the salvaging of parts.* The storage of parts which are salvaged as a part of the wrecking operation on the premises is prohibited. Perhaps the ordinance does not prevent the storage of automobile parts, whether new or used, or salvaged, in a garage when the salvaged parts are obtained from some source other than the wrecking of cars on the defendant's premises." (Emphasis supplied.)

Respondents contend that this language is not helpful in the case at bar because the parties in *Sohns v. Jensen, supra,* in a pretrial stipulation, agreed on the construction of the meaning of an automobile wrecking yard. In *Sohns* the parties did so stipulate. However, the court expressed no doubts or reservations about the parties' stipulation. It is true that the language in *Sohns* is dicta and not determinative of the case at bar. However, it does point out the construction placed by appellants upon the words "automobile wrecking yard" is acceptable to this court.

The construction placed upon the term "automobile wrecking yard" under the section of the ordinance concerning the Commercial "B" district must also be the

construction given the same term in the section regulating agricultural uses. It might be noted, however, that prohibition of the automobile wrecking yards within 750 feet of the highway only further supports the position that the evil the ordinance attempts to eliminate is the unsightly condition created by the storing of dilapidated, smashed and partially dismantled vehicles. The reason for the 750 foot restriction is obviously to reserve to the users of the highway a pleasant view while traveling, and restrict undesirable and incompatible uses to specific areas.

As stated above, the constitutional validity of the ordinance is not at issue on this appeal. However, we are cognizant that aesthetic considerations alone may now be sufficient to justify a prohibited use in a zoning ordinance. In 1955, the court reviewed the trend in the area of the constitutionality of zoning for aesthetics in *State ex rel. Saveland Park Holding Corp. v. Wieland* (1955), 269 Wis. 262, 69 N. W. 2d 217. Most recently we said in *Kamrowski v. State* (1966), 31 Wis. 2d 256, 265, 142 N. W. 2d 793, citing the *Wieland Case:*

"We are aware of the doctrine that zoning restrictions imposed under the police power cannot be based solely on aesthetic considerations, although the court has expressed doubt whether this is any longer the law."

We are of the opinion that the phrase "automobile wrecking yard," as it appears in the Racine county ordinance, includes and prohibits the storage of inoperable automobiles and the dismantling of those automobiles for salvage purposes as well as the final phase of scrapping. Any of these activities within 750 feet of the highway are in violation of the ordinance and upon remand an injunction should issue to restrain these activities within the prohibited area.

*By the Court.*—Judgment reversed, and remanded for further proceedings not inconsistent with this opinion.