No. 13265

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

RUTH COSGROVE,

                    Plaintiff and Appellant,

-vs-

INDUSTRIAL INDEMNITY COMPANY,

                    Defendant and Respondent.

---

Appeal from:  Workers' Compensation Court
            Honorable William E. Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        Hoyt and Bottomly, Great Falls, Montana
        John C. Hoyt argued, Great Falls, Montana

    For Respondent:

        Marra, Wenz and Iwen, Great Falls, Montana
        Joseph R. Marra argued, and Charles Johnson argued,
        Great Falls, Montana

---

                    Submitted:  May 26, 1976

                    Decided:  JUL 16 1976

Filed:  JUL 16 1976

_Thomas J. Kearney_
                Clerk

Honorable Bernard W. Thomas, District Judge, sitting in place of Mr. Chief Justice James T. Harrison, delivered the Opinion of the Court.

Plaintiff appeals from an adverse judgment of the Worker's Compensation Court. The sole issue to be considered is whether plaintiff is entitled to attorney fees under the provisions of section 92-616, R.C.M. 1947, as amended by Chapter 173, Laws of 1974.

The facts are: Plaintiff was injured in the course of her employment on March 25, 1974. Defendant, as the employer's insurance carrier under Plan Two of the Workmen's Compensation Act accepted plaintiff's claim and commenced paying her compensation for temporary total disability which was continued through December 16, 1974. On December 17, 1974, defendant notified plaintiff that effective December 16, 1974, compensation payments were being terminated on the basis of medical opinions from two Great Falls orthopedists that plaintiff was then able to return to work. Thereafter, plaintiff retained counsel who, on or about January 10, 1975, made demand on defendant that plaintiff be reinstated on compensation, since she still complained of pain and felt unable to work. Although defendant at that time refused to resume the compensation payments, it did agree to have plaintiff examined further at the Upper Extremity Clinic in Missoula and to pay the expenses incurred by plaintiff for that examination. On February 27, 1975, plaintiff was examined at the Missoula clinic and the examining doctors made their report containing their diagnosis and their recommendations reading:

> "This lady needs cervical myelogram to determine definitely whether or not there is a C-6 nerve root impingement. If the myelogram is compatible with clinical evaluation then anterior cervical decompression, excision of osteophytes, and intravertebral arthrodesis would be indicated. It is felt that this patient is to be considered unemployable during this period of time of evaluation."

This report was received by defendant on March 17, 1975. Defendant thereupon requested the Workmen's Compensation Division

(hereinafter referred to as the Division) to obtain a clarification of the last sentence of the recommendations. The Division on March 19, 1975, wrote for a clarification. The clarification was supplied by a letter to the Division dated April 18, 1975, in which it was stated:

> "What we meant was that until the cervical myelogram was performed and some decision made as to her definite diagnosis that I would have to consider her unemployable. * * *"

This clarification was received by defendant on April 29, 1975. By letter to plaintiff's counsel dated April 30, 1975, defendant delivered a compensation check for plaintiff in the amount of $593.56 covering the period from December 17, 1974 through April 28, 1975, and stated that defendant would be unable to continue compensation payments beyond that date unless plaintiff made arrangements for the myelogram.

In the meantime, on March 17, 1975, plaintiff's counsel wrote to the Division demanding an emergency hearing and asking that plaintiff be placed on temporary compensation and that defendant be assessed with attorney fees and a ten percent penalty. On April 30, 1975, the Division mailed notice of hearing to be held on May 20, 1975. This notice was received by defendant on May 1, 1975, a day following defendant's payment of the $593.56 covering plaintiff's compensation from December 17, 1974 through April 28, 1975. On May 15, 1975 the Division received defendant's answer and motion to dismiss plaintiff's request for hearing in which it was stated that defendant intended to continue paying "benefits until such time that a cervical myelogram is performed at which time a definite diagnosis can be made." Plaintiff's counsel opposed the motion to dismiss and the Division went ahead with the hearing on May 20, 1975. Thereafter, on August 29, 1975, the hearing examiner for the Division made his findings of fact and conclusions of law.

- 3 -

In addition to the foregoing facts, the hearing examiner found that defendant failed to comply with the provisions of section 92-615, R.C.M. 1947, when it terminated benefits to plaintiff as of December 16, 1974, in that it had not given fifteen days' written notice of the termination to plaintiff and the Division. For that reason, the examiner concluded that a penalty of 10% of the compensation payable over the period December 16, 1974 to April 28, 1975 should be imposed on defendant under the provisions of section 92-824.1, R.C.M. 1947. A further finding was, that at the conclusion of the hearing, it was agreed that defendant would continue to pay temporary total disability benefits for a reasonable period of time so that plaintiff could select a doctor and a place to have a cervical myelogram performed. This was followed by a conclusion of law that the defendant should continue to pay to the plaintiff bi-weekly compensation benefits until the evidence revealed that the payments should be terminated or paid pursuant to a provision of the Workmen's Compensation Act other than section 92-701.1, R.C.M. 1947, which section covers compensation for temporary total disability.

Another conclusion of law on the part of the hearing examiner was that "the language contained in section 92-616, coupled with the facts presented in the instant case, does not permit the Division to order defendant to pay plaintiff's costs and attorney fees."

The findings of fact and conclusions of law of the hearing examiner were adopted by the judge of the Worker's Compensation Court.

Plaintiff's counsel contends that plaintiff would never have been placed back on temporary total compensation but for his efforts and the hearing which he demanded; that only on

the compulsion of a pending hearing and the fear that plaintiff would be awarded attorney fees did defendant resume payment of benefits to plaintiff; and that to allow defendant to defeat plaintiff's right to attorney fees by the voluntary payment under these circumstances would be to emasculate this statute and destroy the purpose of it and the intent of the legislature. Defendant responds that its resumption of compensation payments was not the result of the hearing or of any order or adjudication and points out that it made the deficiency payment of $593.56 immediately upon receiving the clarification from the Upper Extremity Clinic and before receiving notice of the hearing, and that as a part of its motion to dismiss plaintiff's request for a hearing, it had agreed to continue compensation payments until the myelogram could be made.

Whatever it was that motivated defendant to resume payment of compensation, it is clear that the Division has no authority to require payment of attorney fees by defendant unless that authority is found within the terms of section 92-616, as amended. Since the 1974 amendment, which became effective on March 11, 1974, section 92-616 reads:

> "In the event the insurer denies the claim for compensation or terminates compensation benefits, and the claim is later adjudged compensable, by the division or on appeal, the insurer shall pay reasonable costs and attorneys' fees as established by the division. However, under rules adopted by the division and in discretion of the division, an insurer may suspend compensation payments for not more than thirty (30) days pending the receipt of medical information."

The 1974 amendment rewrote this section which was originally enacted as Section 2, Chapter 477, Laws of 1973, and as then enacted read:

> "In the event the insurer denies the claim, or terminates a claim that has already been accepted, and the claim is later determined to be compensable either through hearing or appeal to the courts,

- 5 -

> the insurer shall pay all costs incurred by the
> claimant, including reasonable attorneys' fees
> as established by the division."

In construing a statute, the Court must determine the plain meaning of the words used. The language is to be interpreted in accordance with its usual, ordinary and accepted meaning, and the intention of the legislature in enacting it must be gathered from the language employed therein. Section 93-401-15, R.C.M. 1947. County of Hill v. County of Liberty, 62 Mont. 15; 203 P. 500; Mills v. State Board of Equalization, 97 Mont. 13, 33 P.2d 563; State v. Midland Nat'l Bank, 132 Mont. 339; 317 P.2d 880.

The plain import of section 92-616 is that an adjudication of the claim as compensable either by the Division or on appeal to the courts is a prerequisite to the allowance of attorneys' fees to the claimant. That this was the intention of the legislature is emphasized by the change of wording adopted by the legislature when it rewrote the section in 1974.

Plaintiff argues that under the rule of liberal construction section 92-616 should be interpreted as requiring the payment of attorneys' fees when the insurer has attempted to circumvent the statutory provision by agreeing to pay compensation before there has been an adjudication of compensability, and cites as authority the case of City of Miami Beach v. Schiffman, 144 So.2d 799, 802, in which the Florida Supreme Court interpreted an assertedly similar Florida statute as warranting an allowance of attorneys' fees to the claimant in the absence of an award for compensation, even though the statute appeared to make such an allowance dependent upon an award for compensation. Section 440.34(1) of the Florida statute, as set out in Schiffman reads:

> "'(1)  If the employer or carrier shall file
> notice of controversy as provided in § 440.20
> * * *, or shall decline to pay a claim on or

before the twenty-first day after they have notice of the same, or shall otherwise resist unsuccessfully the payment of compensation, and the injured person shall have employed an attorney at law in the successful prosecution of his claim, there shall, in addition to the award for compensation be awarded reasonable attorneys fee, to be approved by the commission * * *.'"

In reaching its decision in the <u>Schiffman</u> case, the Florida court found some doubt in the language of this section and held that, if doubt exists, it should be resolved in favor of the working man.

While we must and do agree that the Workmen's Compensation Act should be construed liberally and in favor of the working man, the language of the statute must first allow some room for construction. It is obvious that section 92-616 is written in language entirely different from that of the Florida statute and without doubt requires that the claim be "adjudged compensable by the division or on appeal" before the insurer can be required to pay attorney fees. There has been no finding or adjudication of compensability by the Division or by the Worker's Compensation Court in this case.

We must rule on the law as it is and not what some may desire it to be. In the Matter of West Gt. Falls Fl. Cont. Dist., 159 Mont. 277, 496 P.2d 1143.

The judgment of the Worker's Compensation Court is affirmed.

_____
Hon. Bernard W. Thomas, District Judge, sitting in place of Mr. Justice James T. Harrison.

We Concur:

_____

_____

_____

_____
Justices

- 7 -