No. 13430

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

CECIL BERNHARD,

Defendant and Appellant.

---

Appeal from:   District Court of the Eleventh Judicial
               District
               Honorable Robert C. Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Cecil Bernhard argued Pro Se, Eureka, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena,
William Douglas, County Attorney, Libby, Montana
Joe Roberts argued, Libby, Montana

---

Submitted:   January 12, 1977

Decided:

Filed:

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Cecil Bernhard appeals from a judgment entered on a jury verdict in the district court, Lincoln County, convicting him of operating a motor vehicle wrecking facility without a license, a misdemeanor.

On November 6, 1975, a complaint charging defendant with operating a motor vehicle wrecking facility without a license, in violation of section 69-6802, R.C.M. 1947, was filed in Lincoln County justice court. On November 26, 1975, following a jury trial in which defendant was found guilty of the charge, he was fined $300 and sentenced to 30 days in the county jail. Defendant appealed to the district court and on March 1, 1976, was again found guilty by a six person jury. The district court imposed a fine of $250 and a jail sentence of 30 days, both of which were to be suspended provided defendant procured a license to operate a motor vehicle wrecking facility within 30 days of the judgment date. Defendant appeals from this judgment.

At all stages of the proceedings herein defendant appeared and at his request, acted as his own counsel.

Defendant owns a parcel of land located approximately one-half mile from Eureka. This land is abutted by two county roads. On a portion of this land defendant kept between 60 and 100 unlicensed, discarded motor vehicles.

Effective May 1, 1974, Lincoln County began administering a "junk vehicle" program pursuant to Ch. 68, Title 69, Revised Codes of Montana, 1947. This act and the regulation promulgated thereunder provide for the licensing and regulation of motor vehicle wrecking facilities, the control of junk vehicles in nonwrecking yard locations, and the establishment of motor vehicle graveyard facilities.

Terrence Schultz, Lincoln County sanitarian, was given

authority to administer the program by the Lincoln County commissioners. Schultz first met with defendant on May 16, 1974, and explained to him that the discarded vehicles on his property did not comply with the law. A letter dated June 3, 1974, from the sanitarian to defendant further explained the new law and the consequences of noncompliance. Defendant responded with a letter to the sanitarian in which he expressed a desire to "work something out" with respect to his use of the property involved. On July 2, 1974, defendant and Schultz met again and discussed alternative means of conforming defendant's property to the statutory requirements. Defendant's failure to comply with those requirements resulted in a charge of operating a motor vehicle wrecking facility without a license being filed against him in Lincoln County justice court. Defendant was convicted following a jury trial on December 17, 1974.

Defendant's continued refusal to procure a license after his first conviction triggered a second prosecution for violating the act, initiated on November 6, 1975. The present appeal is taken from the district court judgment following conviction on the second charge of operating a motor vehicle wrecking facility without a license.

Defendant challenges the constitutionality of section 69-6802 in this appeal. Specifically, he contends that this statute unconstitutionally allows a taking of property without due process and that the statute under which he was convicted is an ex post facto law. Defendant also contends that the first conviction for violating the statute was a bar to a second prosecution under the same statute and he was therefore subjected to double jeopardy.

Defendant contends that due process requires just compensation to be given to a landowner whose use of his property

is restricted by the statute. The state argues the statute is a valid exercise of its police power and that as such no compensation need be given. Clearly, when the police power has been properly invoked, compensation is not required. Atlantic Coast Line R.R. Co. v. City of Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721.

The license required when a person has four or more junk vehicles at a single location constituting a motor vehicle wrecking facility is not granted unless the vehicles are shielded from public view, pursuant to M.A.C. 16-2.14(2)-S 14261.

Defendant's argument seems to be that the shielding requirement is without foundation and therefore cannot support the state's exercise of its police power.

On the other hand, the state contends its police power is broad enough to include aesthetic considerations which underlie the shielding requirement, and therefore the statute is a valid exercise of the state's police power.

Aesthetic considerations have supported an exercise of the police power to force removal of roadside advertising without compensation. Markham Advertising Company v. State, 73 Wash.2d 405, 439 P.2d 248, appeal dismissed 393 U.S. 316, reh.den. 393 U.S. 1112.

Other jurisdictions have taken the view that aesthetic considerations alone may warrant the exercise of police power with respect to motor vehicle junkyard requirements. Oregon City v. Hartke, 240 Or. 35, 400 P.2d 255; Rotenberg v. Fort Pierce, (Fla. 1967) 202 So.2d 782; Racine County v. Plourde, 38 Wis.2d 403, 157 N.W.2d 591.

Article II, Section 3, 1972 Montana Constitution, declares that the right to a "clean and healthful environment" is an inalienable right of a citizen of this state. Consistent with this

statement and the cases cited, we hold that a legislative pur-pose to preserve or enhance aesthetic values is a sufficient basis for the state's exercise of its police power in section 69-6802 and M.A.C. 16-2.14(2)-S 14261.

Defendant alleges also that section 69-6802 is an ex post facto law. However, he was charged with maintaining four or more junked vehicles on his property after the statute was in effect; he was not subjected to a penalty for having the vehicles prior to that time. His contention therefore, that this is an ex post facto application of the statute is ground-less. In Samuels v. McCurdy, 267 U.S. 188, 45 S.Ct. 264, 69 L.Ed 568, 570, the United States Supreme Court rejected de-fendant's argument that his conviction under a law prohibiting possession of liquor was invalid since his possession of the liquor predated the effective date of the prohibition act. There the court stated:

> "This law is not an ex post facto law. It does not provide a punishment for a past offense. It does not fix a penalty for the owner for having become possessed of the liquor. The penalty it imposes is for continuing to possess the liquor after the enactment of the law. * * *" 69 L.Ed. 570.

Applying this test to defendant's maintenance of his vehicles, it is clear that there was no ex post facto application of section 69-6802.

Neither is there merit in defendant's contention that his conviction on the second charge of failure to license his junk vehicle accumulation was constitutionally barred by the earlier conviction for violating the same statute.

Defendant argues that his refusal to procure a license or shield his property is a single, ongoing act for which he can be prosecuted only once. In State v. Boe, 143 Mont. 141, 146, 388 P.2d 372, this Court stated with respect to the constitutional

protection against double jeopardy:

> "The controlling word is offenses, it does
> not refer to acts."

One test used by this Court to measure the necessary identity of offenses was enunciated in State v. Parmenter, 112 Mont. 312, 316, 116 P.2d 879. There the test was whether:

> " * * * all the evidence relied upon to support
> the conviction under the second information would
> have been admissible and would have sustained a
> conviction under the first information."

In the present case, the two separate complaints charged distinct offenses. The second charge was based on defendant's failure to have a license for a motor vehicle wrecking facility on November 6, 1975. The first complaint alleged that he did not have the necessary license on August 28, 1974. The prosecution could not have known of the second offense at the time of charging defendant for the first offense. As the United States Supreme Court stated in United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L ed 2d 627, 633, Fifth Amendment protection against being twice put in jeopardy:

> " * * * is not properly invoked to bar a second
> prosecution unless the 'same offense' is involved
> in both the first and the second trials.
>
> " * * *
>
> " * * * If the two offenses are not, however,
> the same, then the Double Jeopardy Clause by its
> own terms does not prevent the current prosecution
> * * *."

Another question raised by defendant as a part of his attack on the constitutionality of the statute under which he was charged properly concerns the construction of the statute as it applies to defendant's use of his property.

Defendant was charged with violating section 69-6802, R.C.M. 1947, which provides in part:

> "A person may not conduct, maintain, or operate

a motor vehicle wrecking facility without a
license issued by the department."

Section 69-6801(1), R.C.M. 1947, defines a motor

vehicle wrecking facility:

"(1) 'Motor vehicle wrecking facility' means a
facility buying, selling, or dealing in four (4)
or more vehicles per year of a type required to
be licensed, for the purpose of wrecking, dis-
mantling, disassembling, or substantially changing
the form of the motor vehicle, or which buys or
sells integral secondhand parts or component
material thereof, in whole or in part, and deals
in secondhand motor vehicle parts. The term does
not include a garage where wrecked or disabled
motor vehicles are temporarily stored for a reason-
able period of time for inspection, repairs, or
subsequent removal to a junkyard."

Defendant concedes in this appeal, as he conceded at the

district court trial, that he possesses four or more junk vehicles

on his property. He testified that he has neither done business

at the site nor added or removed any vehicles since the statute

went into effect. Defendant argues that he was not operating a

motor vehicle wrecking facility.

In Cosgrove v. Industrial Indemnity Company, ____Mont.

____, 552 P.2d 622, 624, 33 St.Rep. 675, this Court stated:

"In construing a statute, the Court must deter-
mine the plain meaning of the words used. The
language is to be interpreted in accordance with
its usual, ordinary, and accepted meaning, and
the intention of the legislature in enacting it
must be gathered from the language employed there-
in. Section 93-401-15, R.C.M. 1947; County of Hill
v. County of Liberty, 62 Mont. 15, 203 P. 500;
* * * State v. Midland Nat'l Bank, 132 Mont. 339,
317 P.2d 880."

Section 69-6801(1) states that a facility must "buy, sell,

or deal" in motor vehicles or parts or materials thereof to con-

stitute a "motor vehicle wrecking facility." This language is

not ambiguous. The legislature clearly intended to require

licensing of facilities at which business activity related to

junk vehicles is being carried on. The definition of "motor

vehicle wrecking facility" by its own terms does not include

mere accumulations of junk vehicles.

In analyzing the proof at the trial, we note:

> "Possession at a single location, of four (4)
> or more junk vehicles of a type required to be
> licensed, is prima facie evidence that the
> possessor is operating a motor vehicle wreck-
> ing facility." Section 69-6803(1), R.C.M. 1947.

Additionally, the presence of between 60 and 100 junk vehicles
on defendant's property, _unexplained_, is some evidence of
"dealing" in junk motor vehicles within the meaning of section
69-6801(1), R.C.M. 1947.

The opposing evidence consists solely of defendant's
testimony. In substance, defendant denied that he was "oper-
ating a wrecking yard"; stated that he had not "sold enough
parts in the last year to pay for a license"; and testified:

> "Over the years I have sold a few parts now and
> then when someone would contact me and come to
> me. I have given some away and I have sold some
> for a few dollars but not since this law has
> gone into effect."

Two different juries weighed this opposing evidence
and convicted the defendant of operating a motor vehicle wreck-
ing facility without a license. It is axiomatic that the function
of the jury is to determine the credibility of the witnesses
and the weight to be given their testimony and so resolve the
ultimate question of fact in this case, viz. did defendant
operate a motor vehicle wrecking facility? The jury resolved
this factual dispute by their verdict and we, as the appellate
court, will not interfere where as here, there is substantial
evidence to support the verdict.

Judgment affirmed.

_____
                            Justice

We concur:

_____
Chief Justice

- 8 -

Gene B. Daly

John Conway Harrison

------------------------------
Justices

Mr. Justice Daniel J. Shea, dissenting:

I would reverse the conviction.

While I concur with the majority's findings that the Motor Vehicle Wrecking Facilities Act is constitutional, I do not agree with the conclusion that there was "substantial credible evidence to support the verdict."

The state brought forth no evidence at trial tending to prove that defendant had bought, sold, or dealt in motor vehicles or motor vehicle parts or materials since the effective date of the act. Defendant's testimony, that he had done no business with respect to his junk vehicle accumulation since the licensing requirement went into effect, was wholly uncontradicted.

Granted, section 69-6803(1), R.C.M. 1947, creates a rebuttable presumption that possession alone of four or more junk vehicles at a single location is "prima facie evidence that the possessor is operating a motor vehicle wrecking facility." However, I cannot believe that this presumption of possession can operate to convict one of something more than possession, that of conducting an ongoing business of buying, selling, or dealing in wrecked motor vehicles or used parts. Furthermore, the defendant did explain the presence of the 60 to 100 vehicles, simply by stating that he had acquired them all before the effective date of the statute. The state made repeated attempts to get him to admit that he had done business since the effective date of the act, and the defendant consistently denied he had. Moreover, the state's chief witness, Mr. Schultz, the sanitarian, in response to a question from the trial judge, testified that he did not know whether defendant had acquired any additional vehicles since the effective date of the statute.

Up until the passage of the laws herein, the defendant had no duty to shield his cars from public view. He was entitled to keep

-10-

them there, however obnoxious or odious it might have been to the aesthetic values of the public. It was only after the passage of the act here complained of that there was a duty imposed on defendant to do something about shielding his wrecked cars. If he carried on a motor vehicle wrecking facility, he was required to get a license. An administrative condition precedent to his obtaining a license was that he shield his vehicles from public view. On the other hand, if he did not operate a wrecking facility the state could still request him to shield his vehicles from public view. See section 69-6810, R.C.M. 1947, and M.A.C. 16-2.14(2)-S14261(2)(a). However, the state chose to charge him with operating a motor vehicle wrecking facility without a license. The record does not reveal whether the state knew of the other option, to simply request him to shield his property from public view.

The facts clearly demonstrate that the state did not prove that after the effective date of the statute defendant was operating a motor vehicle wrecking facility; that is, buying, selling or dealing in wrecked vehicles or used parts.

The state relied exclusively on the presumption that the _possession_ of four or more wrecked vehicles at a single location is translated into an ongoing business of _buying_, _selling_, or _dealing_ in wrecked vehicles or used parts, and is, therefore, a motor vehicle wrecking facility. The person charged with enforcing the statutes, Terrence Schultz, the Lincoln County sanitarian, was the state's star witness, and he did not even intimate that the defendant was engaged in the buying, selling, or dealing in wrecked vehicles or used parts after the effective date of the act. He testified he did not know. And, after defendant rested his case, it would have been a simple matter for the state to put witnesses on the stand testifying to his business activity after the effective date of the statute, if the state had the evidence. It is interesting to note here that

-11-

despite the several conversations between the defendant and the sanitarian, the state could not elicit testimony from the sanitarian that the defendant had admitted to him that he was buying, selling or dealing after the effective date of the statute.

The only evidence was the uncontradicted testimony of defendant that after the effective date of the act he did not buy, sell or deal in wrecked motor vehicles or used parts. Other than by his own testimony, how else could he establish that he was not operating a wrecking facility? Certainly the state would have objected (and probably successfully) to the defendant parading many witnesses on the stand to establish negatively that they did not buy, sell or deal with defendant after the effective date of the statute.

Defendant's conviction stands on the fact that he possessed four or more junk vehicles at a single location within public view. Under these circumstances it is shocking to allow a presumption of possession convict defendant of a crime the heart of which is not possession, but the active ongoing business of buying, selling, or dealing in wrecked vehicles or used parts. This kind of presumption has no place in the criminal law.

Daniel J. Shea
_____
Justice

-12-