## SAMUELS v. McCURDY, SHERIFF OF DEKALB COUNTY, GEORGIA.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 225. Argued January 22, 1925.—Decided March 2, 1925.

1. A State law (Georgia Ls. 1917, Ex. Sess.) making it unlawful for a person to possess intoxicating liquors which, previously to its enactment, he had lawfully acquired for consumption as a beverage in his home, and subjecting them to seizure and destruction, is not an *ex post facto* law. P. 193.
2. The seizure and destruction, without compensation, of such liquors, pursuant to the State prohibition laws, does not deprive such possessor of property without due process of law. P. 194.
3. When a State law denied property rights in intoxicating liquors, and made their possession unlawful, except for medicinal and other specified uses under special permit, and provided for seizure under search warrant, and for destruction by an order of court to be made without first hearing the person from whom they were taken; *held,* that the denial of such hearing did not render the law invalid under the due process clause of the Fourteenth Amendment, as applied to one who did not claim to be within the statutory exceptions and whose contention that the law violated his constitutional property rights in liquors seized under it was heard in a suit brought by himself to enjoin their destruction and regain possession. P. 199.

157 Ga. 488, affirmed.

ERROR to a judgment of the Supreme Court of Georgia which affirmed a judgment dismissing a suit brought by the plaintiff in error to enjoin the defendant in error, a sheriff, from destroying intoxicating liquors pursuant to an order of court, and for specific recovery of the liquors.

*Mr. Hooper Alexander* for plaintiff in error.[1]

It may well be doubted whether the prohibition against possession, as contained in the Act of 1917, was ever intended to apply to liquors already in possession.

[1] Defendant in error submitted on the printed record.

Is the law *ex post facto?* When the substance of the act is considered, the objection is well taken. We recognize the soundness of the doctrine announced in *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86, and *Chicago & Alton R. R. Co.* v. *Tranbarger,* 238 U. S. 67. In the case now considered the statute, if it applies to these previously acquired liquors, would be violated by plaintiff, not by doing a prohibited act or by refusing to do what is commanded, but merely by doing nothing.

It may be said that in *Tranbarger's Case* also, the railroad was merely passive. But this is more apparent than real. The statute of Missouri commanded an affirmative act, viz., the opening of the drains, and penalized the refusal. The act we complain of does not do this. It penalizes mere passivity. The lawful purchase had resulted in a condition, to-wit, a physical possession that was lawful when acquired. The statute punishes that. When the State of Georgia makes it a misdemeanor merely to possess liquor, is this not punishing the citizen for having acquired the possession? See *Duncan* v. *Missouri,* 152 U. S. 382; *Calder* v. *Bull,* 3 Dall. 386; *Cummings* v. *Missouri,* 4 Wall. 277; *Fletcher* v. *Peck,* 6 Cranch 137.

The provision as to possession deprives plaintiff in error of his property without due process of law. *Delaney* v. *Plunkett,* 146 Ga. 547, distinguishing *Barbour* v. *State,* 146 Ga. 667, 249 U. S. 454. See *Bartemeyer's Case,* 18 Wall. 129; *Boston Beer Co.* v. *Massachusetts,* 97 U. S. 33; *Barbour* v. *Georgia,* 249 U. S. 454; *Eberle* v. *Michigan,* 232 U. S. 700.

In affirming the judgment of the court below, the Supreme Court of Georgia necessarily ruled that a sheriff may seize and destroy the property of a citizen without any accusation or pleading, without any hearing from him, and without a judgment. There is no law in Georgia conferring such summary power on the sheriff. There could not be. Section 20 of the Act of Nov. 17, 1915,

declares the liquors prohibited in that act to be contra-
band and provides for their destruction after a hearing
and judgment.    Unless they can be destroyed as there
provided, there is no statutory provision for their destruc-
tion.

· The hearing must be given, not as a matter of grace
but as a matter of right.    It is equally axiomatic that the
hearing on a prayer for injunction is not a substitute for
a hearing in the first instance. ᴷAn application for in-
junction is aimed at an unauthorized destruction before
a hearing had upon legal process instituted by the sheriff.
Had such a process been taken the owner would have been
thereby informed as to the grounds on which his property
was to be condemned; would be entitled to be heard, and
would have found it necessary only to disprove those alle-
gations of wrong on which the seizure was made.    It is
no substitute for such a proceeding to hear him come in
and set up, in the dark, that there was no ground at all,
and negative every possible or conceivable ground.    Such
a thing puts upon him the unreasonable burden of dis-
proving every possibility, even those that did not exist,
or which it might never occur to him could be conjectured.

Mr. CHIEF JUSTICE TAFT delivered the opinion of the
Court.

Sig Samuels, a resident of DeKalb County, Georgia,
filed his petition in the Superior Court of that county
against its sheriff, J. A. McCurdy, in which he prayed for
the specific recovery of certain intoxicating liquors belong-
ing to him which he averred had been seized on search
warrant by the defendant.    He asked an injunction to
prevent their destruction.    A rule to show cause issued
and a restraining order.    A general demurrer to the peti-
tion was sustained and the case dismissed.    On error to
the Supreme Court of the State, the judgment was af-
firmed.    This is a writ of error to that judgment.

The petition averred that Phillips, a deputy of the defendant, went to Samuels' residence and acting under a search warrant seized and carried away a large quantity of whiskeys, wines, beer, cordials and liquors; that he stored these in the jail of the county; that it was the purpose of the defendant to destroy them, without any hearing of the petitioner; that the value of the liquors, at the scale of prices current before the prohibition laws, was approximately $400, but at the prices paid thereafter, if illegally sold, would be very much more; that the greater part of the liquors was bought by the petitioner and kept at his home prior to the year 1907; that the balance thereof was legally purchased by him in the State of Florida and legally shipped to him in interstate commerce prior to the year 1915; that, although a citizen of the United States and the State of Georgia, the petitioner was born in Europe where the use of such liquors had been common; that he had been accustomed to their use all his life; that he purchased them lawfully for the use of his family and friends at his own home, and not for any unlawful purpose.

The session laws of Georgia for 1907, page 81, now embodied in Section 426 of the Georgia Penal Code, declare that:

" It shall not be lawful for any person within the limits of this State to sell or barter for valuable consideration, either directly or indirectly, or give away to induce trade at any place of business, or keep or furnish at any other places, or manufacture, or keep on hand at their place of business any alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, or other drinks which, if drunk to excess, will produce intoxication; and any person so offending shall be guilty of a misdemeanor."

By Act of November 17, 1915, Section 2, it is provided:

" It shall be unlawful for any person . . . to manufacture, sell, offer for sale, . . . keep on hand at a place

of business or at or in any social, fraternal or locker club, or otherwise dispose of any of the prohibited liquors and beverages described in Section 1 of this Act, or any of them, in any quantity; but this inhibition does not include, and nothing in this Act shall affect, the social serving of such liquors and beverages in private residences in ordinary social intercourse."

Section 20 of same Act reads as follows:

" Sec. 20. Be it further enacted by the authority aforesaid, That no property rights of any kind shall exist in said prohibited liquors and beverages, or in the vessels kept or used for the purpose of violating any provision of this Act or any law for the promotion of temperance or for the suppression of the evils of intemperance; nor in any such liquors when received, possessed or stored at any forbidden place or anywhere in a quantity forbidden by law, or when kept, stored or deposited in any place in this State for the purpose of sale or unlawful disposition or unlawful furnishing or distribution; and in all such cases the liquors and beverages, and the vessels and receptacles in which such liquors are contained, and the property herein named, kept or used for the purpose of violating the law as aforesaid, are hereby declared to be contraband and are to be forfeited to the State when seized, and may be ordered and condemned to be destroyed after seizure by order of the court that has acquired jurisdiction over the same, or by order of the judge or court after conviction when such liquors and such property named have been seized for use as evidence."

By Act of March 28, 1917, it is declared that:

" It shall be unlawful for any corporation, firm, person, or individual to receive from any common carrier, corporation, firm, person or individual or to have, control, or possess, in this State, any of said enumerated liquors or beverages whether intended for personal use or otherwise, save as is hereinafter excepted."

The provision of 1915 which permitted the social serving of liquors and beverages in private residences and in ordinary social intercourse was expressly repealed by the Act of 1917. Under other provisions liquor and wine may be held for medicinal, mechanical and sacramental purposes on special permits. There are not claimed to be any circumstances in this case excepting the liquors here seized from the condemnation of the Act of 1917.

Three grounds are urged for reversal. First, the 1917 law under which liquor lawfully acquired can be seized and destroyed is an *ex post facto* law. Second, the law in punishing the owner for possessing liquor he had lawfully acquired before its enactment, deprives him of his property without due process. Third, it violates the due process requirement by the seizure and destruction of the liquor without giving the possessor his day in court.

First. This law is not an *ex post facto* law. It does not provide a punishment for a past offense. It does not fix a penalty for the owner for having become possessed of the liquor. The penalty it imposes is for continuing to possess the liquor after the enactment of the law. It is quite the same question as that presented in *Chicago & Alton R. R. Co.* v. *Tranbarger,* 238 U. S. 67. There a Missouri statute required railroads to construct water-outlets across their rights of way. The railroad company had constructed a solid embankment twelve years before the passage of the Act. The railroad was penalized for non-compliance with the statute. This Court said:

"The argument that in respect of its penalty feature the statute is invalid as an *ex post facto* law is sufficiently answered by pointing out that plaintiff in error is subjected to a penalty not because of the manner in which it originally constructed its railroad embankment, nor for anything else done or omitted before the passage of the act in 1907, but because after that time it maintained the embankment in a manner prohibited by that act."

42684°—25——13

Second. Does the seizure of this liquor and its destruc-
tion deprive the plaintiff in error of his property without
due process of law, in violation of the Fourteenth Amend-
ment?

In *Crane* v. *Campbell*, 245 U. S. 304, Crane was arrested
for having in his possession a bottle of whiskey for his own
use, and not for the purpose of giving away or selling the
same to any person. This was under a provision of the
statute of Idaho that it should be unlawful for any person
to import, ship, sell, transport, deliver, receive or have
in his possession any intoxicating liquors. It was held
that the law was within the police power of the State.
The Court said:

" It must now be regarded as settled that, on account
of their well-known noxious qualities and the extraordi-
nary evils shown by experience commonly to be conse-
quent upon their use, a State has power absolutely to
prohibit manufacture, gift, purchase, sale, or transporta-
tion of intoxicating liquors, within its borders without
violating the guarantees of the Fourteenth Amendment."
Citing *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Beer Company*
v. *Massachusetts*, 97 U. S. 25, 33; *Mugler* v. *Kansas*, 123
U. S. 623, 662; *Crowley* v. *Christensen*, 137 U. S. 86, 91;
*Purity Extract Co.* v. *Lynch*, 226 U. S. 192, 201; *Clark
Distilling Co.* v. *Western Maryland Ry. Co.*, 242 U. S.
311, 330, 331.

The Court pointed out that as the State had the power
to prohibit, it might adopt such measures as were reason-
ably appropriate or needful to render exercise of that
power effective; and that considering the notorious diffi-
culties always attendant upon efforts to suppress traffic
in liquors, the Court was unable to say that the challenged
inhibition of their possession was arbitrary and unreason-
able or without proper relation to the legitimate legisla-
tive purpose, that the right to hold intoxicating liquor
for personal use was not one of those fundamental privi-

leges of a citizen of the United States which no State could abridge, and that a contrary view would be incompatible with the undoubted power to prevent manufacture, gift, sale, purchase or transportation of such articles—the only feasible ways of getting them. It did not appear in that case when the liquor seized had been acquired, but presumably after the prohibitory act.

In *Barbour* v. *Georgia*, 249 U. S. 454, it was held that the Georgia prohibitory law, approved November 18, 1915, but which did not become effective until May 1, 1916, was not invalid under the Fourteenth Amendment when applied to the possession of liquor by one who had acquired it after the approval of the law and before it became effective.

These cases it is said do not apply, because the liquor here was lawfully acquired by Samuels before the Act of 1917 making it unlawful for one to be possessed of liquor in his residence for use of his family and his guests.

In *Mugler* v. *Kansas*, 123 U. S. 623, it appeared that the breweries, the use of which as such was enjoined as a nuisance, and the beer, the sale of which was also enjoined, were owned by Mugler before the Prohibition Act, making both unlawful. In answering the argument that, even if the State might prohibit the use and sale, compensation should be made for them before putting it into effect, to accord with the Fourteenth Amendment, Mr. Justice Harlan, speaking for the Court, said:

" As already stated, the present case must be governed by principles that do not involve the power of eminent domain, in the exercise of which property may not be taken for public use without compensation. A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit. Such legislation does not

disturb the owner in the control or use of his property for lawful purposes, nor restrict his right to dispose of it, but is only a declaration by the State that its use by any one, for certain forbidden purposes, is prejudicial to the public interests. Nor can legislation of that character come within the Fourteenth Amendment, in any case, unless it is apparent that its real object is not to protect the community, or to promote the general well-being, but, under the guise of police regulation, to deprive the owner of his liberty and property, without due process of law. The power which the States have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public, is not—and, consistently with the existence and safety of organized society, can not be—burdened with the condition that the State must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community. The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner.

"It is true, that, when the defendants in these cases purchased or erected their breweries, the laws of the State did not forbid the manufacture of intoxicating liquors. But the State did not thereby give any assurance, or come under an obligation, that its legislation upon that subject would remain unchanged. Indeed, as was said in *Stone* v. *Mississippi*, above cited, the supervision of the public health and the public morals is a governmental power, 'continuing in its nature,' and 'to be dealt with as the

special exigencies of the moment may require '; and that, ' for this purpose, the largest legislative discretion is allowed, and the discretion can not be parted with any more than the power itself.' "

In view of this language and the agreed statement of facts, the decision necessarily was that the sale of beer made and owned before the prohibition law could be punished by that law as a nuisance and that no compensation was necessary, if the legislature deemed this to be necessary for the health and morals of the community.

It is true that a remark in the opinion in *Eberle v. Michigan*, 232 U. S. 700, 706, refers to the question as still an open one, and the same reference is made in *Barbour v. Georgia*, 249 U. S. 454, 459. In *Hamilton v. Kentucky Distilleries Company*, 251 U. S. 146, 157, there is a similar reference, though with a suggestive citation to *Mugler v. Kansas*. And in *Jacob Ruppert v. Caffey*, 251 U. S. 264, after calling attention to this reservation, this Court said:

"It should, however, be noted that, among the judgments affirmed in the *Mugler Case*, was one for violation of the act by selling beer acquired before its enactment (see pp. 625, 627); and that it was assumed without discussion that the same rule applied to the brewery and its product (see p. 669)."

But it was not found necessary to consider the question in the *Jacob Ruppert Case*, because there was no appropriation of property but merely a lessening of value due to permissible restriction imposed upon its use.

The ultimate legislative object of prohibition is to prevent the drinking of intoxicating liquor by any one because of the demoralizing effect of drunkenness upon society. The state has the power to subject those members of society who might indulge in the use of such liquor without injury to themselves to a deprivation of access to liquor in order to remove temptation from those whom

its use would demoralize and to avoid the abuses which follow in its train. Accordingly laws have been enacted by the States, and sustained by this Court, by which it has been made illegal to manufacture liquor for one's own use or for another's, to transport it or to sell it or to give it away to others. The legislature has this power whether it affects liquor lawfully acquired before the prohibition or not. Without compensation it may thus seek to reduce the drinking of liquor. It is obvious that if men are permitted to maintain liquor in their possession, though only for their own consumption, there is danger of its becoming accessible to others. Legislation making possession unlawful is therefore within the police power of the States as a reasonable mode of reducing the evils of drunkenness, as we have seen in the *Crane* and *Barbour* cases. The only question which arises is whether for the shrunken opportunity of the possessor of liquor who acquired it before the law, to use it only for his own consumption, the State must make compensation. By valid laws, his property rights have been so far reduced that it would be difficult to measure their value. That which had the qualities of property has, by successive provisions of law in the interest of all, been losing its qualities as property. For many years, every one who has made or stored liquor has known that it was a kind of property which because of its possible vicious uses might be denied by the State the character and attributes as such; that legislation calculated to suppress its use in the interest of public health and morality was lawful and possible, and this without compensation. Why should compensation be made now for the mere remnant of the original right if nothing was paid for the loss of the right to sell the liquor, give it away or transport it? The necessity for its destruction is claimed under the same police power to be for the public betterment as that which authorized its previous restrictions. It seems to us that this conclusion finds support

in the passage quoted above from the opinion in the *Mugler Case* and its application to the agreed facts, and in *Gardner* v. *Michigan,* 199 U. S. 325, and *Reduction Company* v. *Sanitary Works,* 199 U. S. 306. See also *American Storage Company* v. *Chicago,* 211 U. S. 306, and *Adams* v. *Milwaukee,* 228 U. S. 572, 584; *Lawton* v. *Steele,* 152 U. S. 133, 136; *United States* v. *Pacific Railroad,* 120 U. S. 227, 239. In *Gardner* v. *Michigan* à municipal ordinance was held valid which required the owner to deliver to the agent of the city all garbage with vegetable and animal refuse, although it was shown that it was property of value because it could be advantageously used for the manufacture of commercial fat. It was decided that the police power justified the legislature or its subordinate, the city council, in the interest of the public in removing and destroying the garbage, as a health measure, without compensation.

Finally, it is said that the petitioner here has no day in court provided by the law, and therefore that in this respect the liquors have been taken from him without due process. The Supreme Court of Georgia has held in *Delaney* v. *Plunkett,* 146 Ga. 547, 565, that, under the 20th Section of the Act of November 17, 1915 (Georgia Laws, Extra. Session 1915, p. 77,) quoted above, which declares that no property rights of any kind shall exist in prohibited liquors and beverages, no hearing need be given the possessor of unlawfully held liquors, but that they may be destroyed by order of the court. In the *Plunkett Case* the seizure was of liquor held in excess of an amount permitted by the law of 1915. By the amendment of 1917, as already pointed out, possession even for home use is now forbidden. As in the *Plunkett Case,* the petitioner does not deny that the liquor seized was within the condemnation of the law and that he has no defense to his possession of it except as he asserts a property right protected by the Fourteenth Amendment which we have

found he does not have. As a search warrant issued, the seizure was presumably valid. The law provides for an order of destruction by a Court, but it does not provide for notice to the previous possessor of the liquor and a hearing before the order is made. Under the circumstances, *prima facie,* the liquor existed contrary to law and it was for the possessor to prove the very narrow exceptions under which he could retain it as lawful. If he desired to try the validity of the seizure, or the existence of the exception by which his possession could be made to appear legal, he could resort to suit to obtain possession and to enjoin the destruction under the Georgia law, as he has done in this case. This under the circumstances, it seems to us, constitutes sufficient process of law under the Federal Constitution as respects one in his situation. *Lawton v. Steele,* 152 U. S. 133, 142. What might be necessary, if he were claiming to hold the liquor lawfully for medicinal or some other specially excepted purpose, we need not consider.

The averment in the petition was that the sheriff intended to destroy the liquor. There is no averment in the petition that he did not intend to do this by order of Court upon his application. We must take it for granted on the demurrer, therefore, as against the pleader that the sheriff did not intend to depart from Section 20 of the Act of 1915, and that the question made here is on the validity of that section.

*Judgment affirmed.*

MR. JUSTICE BUTLER, dissenting.

I cannot agree with the opinion of the Court in this case. Plaintiff in error is a man of temperate habits, long accustomed to use alcoholic liquor as a beverage. He never sold or in any way illegally dealt with intoxicating liquors and has never been accused of so doing. His supply was lawfully acquired years before the passage of the

enactment in question (the Act of March 8, 1917) for the use of himself, his family and friends in his own home, and not for any unlawful purpose. It consisted of spirituous, vinous and malt liquors and, before the passage of the act, was worth about $400. September 21, 1922, a deputy sheriff or constable, in company with a number of other persons, went to the house of plaintiff in error and searched it and seized and carried away his stock of liquor and delivered it to the sheriff. It was his purpose summarily to destroy it. This suit was brought to restrain him.

Plaintiff in error insists that the seizure deprived him of his property in violation of the due process clause of the Fourteenth Amendment. The decisions of this court in *Crane* v. *Campbell*, 245 U. S. 304, and *Barbour* v. *Georgia*, 249 U. S. 454, are not controlling. In the *Crane Case*, the Idaho statute under consideration (c. 11, Session Laws 1915) made it unlawful to have in possession or to transport any intoxicating liquor within a prohibition district in that State. Crane was accused of having in his possession a bottle of whiskey for his own use and benefit, and not for the purpose of giving away or selling the same. The state Supreme Court said: "The only means provided by the act for procuring intoxicating liquors in a prohibition district for any purpose relates to wine to be used for sacramental purposes and pure alcohol to be used for scientific or mechanical purposes, or for compounding or preparing medicine, so that the possession of whiskey, or of any intoxicating liquor, other than wine and pure alcohol for the uses above-mentioned is prohibited." 27 Idaho 671, 679. The point was not made that the liquor was lawfully acquired or that it had never been unlawfully sold, transported or held. Presumably, the whiskey was acquired after the act took effect, and it could not be claimed that it had not been sold or transported in violation of law. In the *Barbour Case,* the prosecution was

under Georgia legislation approved November 18, 1915, which did not take effect until May 1, 1916. Barbour was convicted of having more than a gallon of vinous liquor in his possession on June 10, 1916. This Court, following the Supreme Court of Georgia, assumed that the liquor was acquired after the act was passed and before it took effect, and held that Barbour took the liquor with notice that after a day certain its possession, by mere lapse of time, would become a crime. The act of 1907, now section 426 of the Georgia Penal Code, was in force and made it unlawful for any person to sell or barter intoxicating liquors. It did not appear and was not claimed that the liquor had been lawfully acquired by the accused or that it had not been sold, transported or held in violation of law. The precise question here raised was not decided in either of these cases. Each presented facts materially different from those in the present case.

The seizure and destruction cannot be sustained on the ground that the act in question destroyed the value of the liquor. The question of compensation is not involved. That alcoholic liquors are capable of valuable uses is recognized by the whole mass of state and national regulatory and prohibitory laws, as well as by the state legislation in question. The liquors seized were valuable for such private use as was intended by plaintiff in error. The insistence is that the State is without power to seize and destroy a private supply of intoxicating liquor lawfully acquired before the prohibitory legislation and kept in one's house for his own use. Such seizure and destruction can be supported only on the ground that the private possession and use would injure the public. See *Mugler* v. *Kansas,* 123 U. S. 623, 663; *Gardner* v. *Michigan,* 199 U. S. 325, 333.

The enactment does not directly forbid the drinking of intoxicating liquors. The State Supreme Court has not construed it to prevent such private use of intoxicants.

It is aimed at the liquor traffic. See *De Laney* v. *Plunkett,*
146 Ga. 547; *Barbour* v. *State,* 146 Ga. 667; *Bunger* v.
*State,* 146 Ga. 672, cited by that court as authority for its
decision in this case. Attention has not been called to
any legislation which attempts directly to forbid the mere
drinking or other private use of such liquors. As against
the objection, that it would infringe constitutional pro-
visions safeguarding liberty and property, the power of
the State to enact and enforce such legislation has not
been established. That question is not involved in this
case.

Any suggestion that, the destruction of such private
supply lawfully acquired and held for the use of the owner
in his own home is necessary for or has any relation to the
suppression of sales or to the regulation of the liquor
traffic or to the protection of the public from injury would
be fanciful and without foundation. The facts in the
case do not permit the application of the doctrine applied
in *Purity Extract Co. v. Lynch,* 226 U. S. 192, 204.

To me it seems very plain that, as applied, the law is
oppressive and arbitrary, and that the seizure deprived
plaintiff in error of his property in violation of the due
process clause of the Fourteenth Amendment. I would
reverse the judgment of the state court.