OKLAHOMA ALCOHOLIC BEVERAGE
CONTROL BOARD, Appellant,

v.

PARKHILL RESTAURANTS, INC.,
d/b/a Oklahoma Territory,
Appellee.

No. 52566.

Supreme Court of Oklahoma.

July 5, 1983.

Rehearing Denied Oct. 4, 1983.

S.M. Fallis, Jr., Dist. Atty., Tulsa County, William R. Edmison, Asst. Dist. Atty., Tulsa, for appellant.

James K. Secrest, II, W. Michael Hill, Tulsa, for appellee.

PER CURIAM:

This is an appeal from a judgment of the District Court determining certain portions of Sections 539 and 568 of Title 37 to be unconstitutional and directing alcoholic beverages seized thereunder to be returned. We consider the constitutionality only of those portions of Sections 539 and 568 which were determined by the trial court to be unconstitutional,[1] necessarily limiting our discussion to the validity of the statutes as applied.

On May 11, 1978, agents of the Oklahoma Alcoholic Control Board (ABC), assisted by members of the Tulsa Police Department, entered premises owned by Appellee, Parkhill Restaurants, Inc. (Parkhill), in Tulsa, Oklahoma. The agents purchased and were served liquor by the drink by two of Parkhill's employees, resulting in the arrest of

1. The respective sections, Laws 1959, p. 161, § 39, now 37 O.S.1981, § 539, and Laws 1961, p. 281, § 1, now 37 O.S.1981, § 568, with the portions determined by the trial court to be unconstitutional emphasized, are as follows:

§ 539. Search Warrant—Seizure and destruction—Forfeiture and sale

(a) A search warrant may be issued under Chapter 24 of Title 22, Oklahoma Statutes 1951, as amended,[1] for the purpose of searching for, seizing, destroying or holding any alcoholic beverages 'possessed, sold, transported, manufactured, kept, or stored in violation of this Act; for the purpose of searching for and seizing any apparatus, vehicle, equipment, or instrumentality used for, or intended for use in, manufacturing or transporting any alcoholic beverage in violation of this Act; and all such property shall be forfeited to the State of Oklahoma. This Section shall not be construed to require a search warrant for duly authorized agents of the Board to enter upon and inspect any licensed premises, but such right of entry and inspection shall be a condition on which every license shall be issued and the application for, and acceptance of, any license hereunder shall conclusively be deemed to be consent of the applicant and licensee to such entry and inspection.

(b) Any alcoholic beverages upon which the appropriate federal excise tax has not been paid at the time of seizure under this Section shall be destroyed by the sheriff who seized the same or to whom the same has been delivered in accordance with the provisions of Chapter 24 of Title 22, Oklahoma Statutes 1951, as amended, after the same is no longer needed as evidence in any criminal prosecution. *All other property, including alcoholic beverages upon which the appropriate federal excise tax has been paid, seized under this Section shall be forfeited to the State of Oklahoma by order of the court issuing the process by virtue of which such property was seized, or before which the persons violating the law, or to which such property was taken by the officer or officers making the seizure. Said court shall, without a jury, order an immediate hearing as to whether the property so seized was subject to seizure under this Section, and take such legal evidence as is offered, and determine the same as in civil cases. If the court finds from a preponderance of the evidence that the property so seized was subject to seizure under this Section, it shall render judgment accordingly and order said property forfeited to the State of Oklahoma and sold by the officer having the same in charge,* after giving ten (10) days' notice by one publication in a legal newspaper of the county or, if no legal newspaper is published in said county, after five (5) notices of such sale have been posted in conspicuous places in the city or town wherein such sale is to be made, at least ten (10) days before such sale. Appeal from such an order may be taken as in civil cases. When such property is sold under the provisions of this Section, the proceeds thereof shall be distributed as follows: First, to the payment of the costs of the case in which the order of forfeiture was made and the actual expenses of preserving the property; and second, the remainder shall be deposited with the State Treasurer to the credit of the General Revenue Fund of the State of Oklahoma.

1 Section 1221 et seq. of Title 22.

§ 568. Possession of alcoholic beverages with intent to sell without license—Forfeiture

It shall be unlawful for any person, firm, or corporation to have in their possession any alcoholic beverages with the intent to sell the same without having first procured a license therefor from the Oklahoma Alcoholic Beverage Control Board as now provided for by law; *and all alcoholic beverages found in the possession or under the control of any person or persons, firm, or corporation who, on the same date, or within fifteen (15) days prior thereto, has violated subsection (c) or subsection (h) of Section 38, Chapter 1, Title 37, Oklahoma Session Laws 1959, pages 160 and 161 (37 O.S. Supp.1959, § 538(c) and § 538(h), shall be seized by the arresting officer and shall be forfeited to the State of Oklahoma, as provided for in Section 39, Chapter 1, Title 37, Oklahoma Session Laws 1959, page 161 (37 O.S.Supp. 1959, § 539).*

the two employees and the assistant manager for open saloon violations. Incident to the arrest, a warrantless search of the premises was conducted and approximately 400 bottles of alcoholic beverages were seized. The seized bottles, both sealed and unsealed, are subject to a wide range of purported ownership. Some of the bottles belonged to individual patrons or "members" of the "club" and were so labeled. A number of the sealed bottles had been purchased by the manager of the premises shortly prior to seizure for use during weekend private parties. These particular bottles were acquired by the manager for the hosts of the parties from inventories prepared by the hosts and with funds prepaid by the hosts. Other bottles, both sealed and unsealed, were purchased by the management from an initial $15 "membership fee" for "members" who had specifically instructed the management what to purchase for them. Still, other bottles, both sealed and unsealed, were purchased at random by the management from a similar initial fee paid by "members" who had not specifically instructed management what to purchase for them. Bottles purchased for the private parties and those available for "members" were not labeled. They were kept in the same area of the establishment, although the bottles for the private parties were segregated from the balance of the stock. Upon confiscation, the bottles were intermingled so that only those which were labeled were clearly identifiable.

The assistant manager and the two employees who had been arrested pleaded guilty to violation of the open saloon act under Section 538(h) of Title 37. The assistant manager was fined $150 and costs and each employee arrested was fined $100 and costs.

Parkhill moved for an immediate hearing at which the District Court held that the bottles were not subject to forfeiture and should be returned. At a subsequent hearing following ABC's Motion for a New Hearing and Application to Stay Execution of Order, the District Court sustained the Motion with regard to the unlabeled bottles and overruled the Motion as to the labeled bottles. The labeled bottles were ordered returned to Parkhill. The District Court rendered judgment determining portion of Sections 539 and 568 to be unconstitutional, and ordered the return of all of the liquor seized. ABC's appeal is perfected only as to the order to return of the unlabeled bottles and the issue of the constitutionality of these provisions.

I

The threshold question to be addressed is whether Parkhill had justiciable status to challenge the constitutionality of the state statutes under which liquor was seized as contraband. A party generally must assert his own legal rights and interests and cannot rest his claim to relief on the rights or interests of third parties.[2] In the case before us, Parkhill was a bailee of all of the liquor seized whether it be characterized as a part of a liquor "pool", liquor purchased for anticipated weekend parties to be held on the club premises, or liquor owned for the private exclusive use of a patron with the bottles so labeled. A bailee has a temporary, qualified interest in the bailed property which he may vindicate in his own right against any stranger or third person, and an unlawful invasion of that right by a stranger is actionable.[3] ABC had no right to seize the liquor in possession of Parkhill as bailee in the absence of a constitutionally valid statute authorizing the seizure. We therefore hold that Parkhill had justiciable status to challenge the constitutionality of the statutes in question.

II

That the State has the power and right to provide that intoxicating liquor kept or transported in violation of law may be seized, condemned, and destroyed upon

2. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Matter of Guardianship of Randall,* 569 P.2d 549 (Okl.App.1977).

3. *Lamb Bros., Inc. v. First State Bank,* 285 Or. 39, 589 P.2d 1094 (Or.1979); *State v. Hall,* 224 N.C. 314, 30 S.E.2d 158 (1944).

order of a judge of a court having jurisdiction in which it is rendered and pursuant to proceedings provided by law for the forfeiture and condemnation of such liquors, is no longer subject to question.[4] And, seizure under a state law making liquor possession unlawful and providing for its destruction without according the owner a hearing before the seizure does not deprive the owner of his property without due process of law.[5] Such was once the statutory status of liquor in Oklahoma.[6]

Under the provisions of the Oklahoma statutes here under attack, liquor becomes unlawful only when used in violation of the Oklahoma Alcoholic Beverage Control Act.[7] Thus its status may be either lawful or *malum prohibitum*. As the United States Supreme Court stated in *Ziffrin, Inc. v. Reeves,*[8] "[p]roperty rights in intoxicants depend on state laws and cease if the liquor becomes contraband." It is clear that a part of the liquor seized was *malum prohibitum* under a "pool system" condemned in *Harrell v. State.*[9] It is, however, primarily the inclusion in the seizure of liquor which was arguably "lawful" that gives rise to the constitutional challenge.

The District Court held that the statutes were "overbroad" in that they reached constitutionally protected rights and activities since they permitted seizure of *all* alcoholic beverages in the possession of one who had violated the open saloon law, rather than limiting seizure to alcoholic beverages which constitute contraband and/or those seized as evidence. The District Court reasoned that bottles belonging to third parties such as club patrons, innocent of violating the law, were subject to seizure and ulti-mate sale. This, it concluded, infringed on rights granted in Section 505 of Title 37, which provides that nothing in the Intoxicating Liquors Act shall prevent an individual from possessing and transporting alcoholic beverages for the personal use of that individual, his family and guests.

The District Court also found that due process under the 14th Amendment to the United States Constitution and under Okla. Const. Art. 2, § 7, was violated where alcohol was seized without a warrant and without a prior adversary hearing. It further found fault with the lack of a specific provision for notice to the owner of the property seized or to the person in possession at the time of seizure, of the post-seizure hearing to determine the propriety of the seizure prior to the court's rendition of a forfeiture order.

Additionally, the District Court held to be infirm the provision of Section 568 which allows seizure of alcoholic beverages within 15 days of specified violations. However, we need not address the merits of this issue since challenge to the statutes' constitutionality should be limited to consideration of the statutes as applied, and here, seizure occurred on the same day as the arrest. The District Court's invocation of facial overbreadth analysis is not proper here. Such is appropriate where the activity prohibited by the law is a constitutionally protected activity such as free speech. The statutes in question here ban no conduct protected by the state or federal constitutions. The District Court was therefore limited to determining the constitutionality of the statutes merely as applied.[10]

4. *Ziffrin, Inc. v. Reeves,* 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939); *Kidd v. Pearson,* 128 U.S. 1, 9 S.Ct. 6, 32 L.Ed. 346 (1888); *Mugler v. Kansas,* 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887).

5. *Samuels v. McCurdy,* 267 U.S. 188, 45 S.Ct. 264, 69 L.Ed. 568 (1925).

6. *Doc & Bill Furniture Co. v. State,* 83 Okl. 128, 200 P. 868 (1921).

7. 37 O.S.1981, § 502, *et seq.*

8. *Supra,* n. 4.

9. 359 P.2d 610 (Okl.Cr.1961).

10. As stated by the United States Supreme Court in *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973):

Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in situations not before the Court.

\* \* \* \* \* \*

Under the Twenty-First Amendment of the United States Constitution,[11] states have broad powers to regulate the time, places, and circumstances under which liquor may be sold.[12] Further, a presumption in favor of validity is afforded to state laws regulating intoxicating liquors.[13] It is axiomatic that protection of the health and safety of the public is a paramount governmental interest.[14] The Alcoholic Beverage Control Act is an exercise of the State's police power to protect the welfare and safety of the people of Oklahoma and its provisions are to be construed for that purpose.[15] As a choice of means in accomplishing this objective, confiscation of liquor illegally used is an integral part of enforcement of the open saloon law.

Without the spectre of this forfeiture, with the only penalty being a monetary fine, the open saloon law would be robbed of some of the deterrent effect it possesses. The Fourth Amendment to the United States Constitution and Okl. Const. Art. 2, § 30, require that the execution of any search and seizure must be grounded on reasonableness. *See* n. 26, *infra.* We therefore hold that seizure should be limited to those bottles for which there is probable cause to believe they are possessed or used in violation of the Act.

This holding should not be construed as a blanket ban on seizure of labeled bottles apparently belonging to third parties, for it would be a simple matter for a saloonkeeper intent on evading the law, to label all bottles in his possession with names, real or fictitious.[16] Therefore, where law enforcement officers have probable cause to believe the labeling was merely a guise to circumvent the open saloon law, seizure of those bottles may be justified.

Since Section 539 provides that a post-confiscation hearing be held immediately to determine if the property seized were subject to seizure, interests in alcohol which were lawfully possessed and not contraband, are afforded procedural safeguards against ultimate forfeiture and sale. We observe further that should officers mistakenly, but in good faith, seize bottles which were lawfully possessed, due process is not offended, for the Fourteenth Amendment does not guarantee that all decisions by state officials will be correct.[17]

Further, Section 568 specifically provides that the seizure and forfeiture of alcoholic

[F]acial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" towards conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. [Citations omitted.]

11. U.S.C.A. Const. Amend. 21, provides in relevant part: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

12. *New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981), on remand 445 N.Y.S.2d 87, 54 N.Y.2d 228, 429 N.E.2d 765, *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982).

13. *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 390 (1972), *rehearing denied* 410 U.S. 948, 93 S.Ct. 1351, 35 L.Ed.2d 615 (1973).

14. *See Hodel v. Virginia Surface Min. and Reclamation Ass'n., Inc.,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981).

15. Laws 1959, p. 141, § 3, now 37 O.S.1981, § 503.

16. Lest this idea be thought unrealistic or farfetched, it is noteworthy that in the companion case of B.C. Investments, of 234 bottles confiscated, no less than 8 of them were labeled with the name of one of the employees, a G. Fox, who also was a "member" of the club.

17. *Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976).

beverages thereunder is governed by Section 539, which requires that a post-seizure hearing be held immediately to determine whether the property seized was subject to seizure under that section. Because such a hearing is required, it is clear the legislature intended that ultimate forfeiture would be only of unlawfully possessed liquor, thus allowing vindication of interests in alcohol which is lawfully possessed.

We therefore conclude that the important governmental interest in the protection of the public outweighs any temporary loss of lawfully possessed property. We find no constitutional infirmity in this respect.

### III

In determining the necessity of a pre-seizure hearing, we turn to the leading case of *Fuentes v. Shevin.*[18] There the Supreme Court held that certain prejudgment replevin statutes authorizing summary seizure of goods or chattels without a prior hearing violated the constitutional mandate against deprivation of property without due process.[19] While announcing the existent general rule that there must be a prior hearing before there can be a valid seizure of personal property, the Court delineated circumstances which would warrant an exception to the rule. First, the seizure must be directly necessary to secure an important governmental or general public interest. Second, there must be a special need for prompt action. Third, the state must maintain strict control over its monopoly of legitimate force, that is, the person initiating the seizure must be a government official responsible for determining, according to a narrowly drawn statute, that it was necessary and justified in that particular case. In applying these standards to the present case, we find that they are adequately met, justifying seizure of the alcoholic beverages prior to a hearing.

The legislature in enacting Section 539 and 568 has promulgated public policy concerning alcoholic beverages. There is clearly an important governmental interest in implementing and enforcing these statutes for the protection of the public's health and safety. Second, the ease with which bottles of alcoholic beverages may be destroyed or disposed of clearly mandates prompt action on the part of law enforcement officials. The requirement of a prior hearing would result in many cases in the loss of the evidence vital to prosecution of the wrongdoers. Finally, the seizure is to be initiated by government officials who determined, under the provisions of the applicable statutes, whether seizure is appropriate. Under the circumstances we find no significant due process violation.

Further, we note a later United States Supreme Court pronouncement on pre-deprivation hearings in *Parratt v. Taylor.*[20] In recognizing the common-sense impossibility of conducting a pre-deprivation hearing in every situation, the Court stated that procedural due process requirements are satisfied where some meaningful means is available to assess the propriety of the State's action at some time after the initial taking where either the necessity of quick action by the State or the impracticality of providing any meaningful pre-deprivation process exists. In the present situation a pre-deprivation hearing would be untenable. Here, the post-seizure hearing was conducted less than thirty (30) days after the seizure. The parties do not complain of the length of the deprivation, nor do we view it as onerous in this case. Section 539, therefore, is not unconstitutional for lack of due process in failing to provide for notice and hearing prior to seizure of the liquor.

Nor is due process offended where there is no notice to the third-party owner of property seized while in possession of a

18. 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

19. We note the factual differences between the *Fuentes* case and the matter at bar.

20. 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

violator so long as there is adequate provision for notice to those actually in possession of the confiscated property.[21] The fact that the Oklahoma statutes do not provide for notice to third party owners does not, alone, render them invalid on constitutional grounds. Section 539 does not by its strict terms provide for notice to the parties in possession of the confiscated goods prior to the "immediate hearing" which the presiding judge is directed to undertake. However, this is not the first instance in which we have appraised the constitutionality of a forfeiture statute which does not specifically provide for notice to parties involved.

■ In *Spry v. Freeman*[22] we were asked to determine whether 1917 Okla.Sess. Laws, ch. 188, was unconstitutional in that under it, a person could be deprived of property without due process of law.[23] The close similarity of the wording of this section with the present Section 539 of Title 37 is noteworthy. The provisions made for a hearing to determine whether the seized property was being used in an illegal enterprise are almost identical. Speaking of that earlier statute in the *Spry* case, we stated:

> Said section contemplates that the proceedings had for the confiscation of the property therein described shall conform to the Code of Civil Procedure, and notice must be given in some one of the ways recognized by the Code of Civil Procedure

in order to confer jurisdiction upon the court.

Thus, we have held that a similar statute, although not providing for notice on its face, is to be so construed as to contain a requirement for some form of notice adequate under our Code of Civil Procedure, and, hence, under both the State and Federal Constitution. We so hold here in relation to Section 539.

Title 25 O.S.1981, § 11, defines actual notice as "express information of a fact." It is undeniable in the instant case that Parkhill, from whom the bottles were confiscated, had actual notice of the confiscation. Indeed, it was Parkhill, through its manager, who brought the present action to determine the liquor's ownership without waiting for the mandatory hearing to be held by the court. We held in *Spry, supra,* that the fact that the appellant was arrested on a criminal charge did not serve to impart notice to him that he or his property was being proceeded against in a civil action. However, we also held in our syllabus:

> Any forfeiture ordered by the Court on any hearing when such notice has not been given or the owner of said property has not waived such notice and appeared is a taking of property without due process of law, and is void.

In the matter presently before us, Parkhill, through its agent/manager, had actual no-

**21.** *See, Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

**22.** 85 Okl. 119, 204 P. 1104 (1922).

**23.** The statute read in pertinent part:
   Section 1. All vehicles, including automobiles, and all animals used in hauling or transporting any liquor the sale of which is prohibited by the laws of this State, from one place to another in this state in violation of the laws thereof, shall be forfeited to the state by order of the court issuing the process by virtue of which such vehicles and animals were seized, or before which the persons violating the law, or the vehicles or animals are taken by the officer or officers making the seizure.
   Section 2. The court having jurisdiction of the property so seized shall without a jury order an immediate hearing as to whether the

property so seized was being used for unlawful purposes, and take such legal evidences as are offered on each behalf and determine the same as in civil cases. Should the court find from a preponderance of the testimony that the property so seized was being used for the unlawful transportation of liquor under the laws of this state, it shall render judgment accordingly and declare said property forfeited to the State of Oklahoma. Thereupon, said property shall, under the order of said court, be sold by the officer having the same in charge after ten days notice published in a daily newspaper of the county wherein said sale is to take place, or if no daily newspaper is published in said county, then by posting five notices in conspicuous places in the city or town wherein such sale is to be made. Such sales shall be for cash.

tice of the confiscation and forfeiture proceedings. One who commences an action cannot complain of notice of it. Generally, one having actual notice is not prejudiced by and may not complain of the failure to receive statutory notice.[24] Parkhill's actual notice was constitutionally sufficient and complied with our Code of Civil Procedure.[25]

## IV

■ The District Court also questioned the validity of the statutes on the basis that they allowed seizure without requiring that a warrant issue. However, where specific provision for search and seizure do not appear in the statutes, Fourth Amendment principles, as embodied in the Okl. Const. Art. 2, § 30, govern and will limit searches and seizures to the traditional standard of reasonableness.[26] We therefore find no basis to hold that Section 539 is invalid be-

cause it does not contain language requiring that seizure be pursuant to a warrant.

In the case before the District Court the warrantless seizure was made incident to a warrantless misdemeanor arrest. Title 22 O.S.1981, § 196, requires a warrant for a misdemeanor arrest unless the offense was committed or attempted within the arresting officer's presence.[27] In either case, search and seizure incident to arrest may be valid if Fourth Amendment standards are met. Since the District Court concluded that warrantless seizure under the statutes was patently unconstitutional, no inquiry was made as to whether the arresting officers exceeded the bounds of reasonableness imposed by the Fourth Amendment in effecting the warrantless search and seizure.[28]

## V

Viewing the matter in the aggregate, we cannot conclude these sections are unconsti-

**24.** *Howell v. Blue Cross and Blue Shield,* 609 P.2d 1283 (Okl.1980).

**25.** We make no finding as to whether notice to Parkhill would constitute notice to the third party owners, but we note the established rule that notice to the agent constitutes notice to the principal unless circumstances are such as to raise a clear presumption that he will not communicate the knowledge to his principal. *A.A. Murphy, Inc. v. Banfield,* 363 P.2d 942 (Okl.1961). We also note the statutory duty found at 15 O.S.1981, § 450, of a bailee to promptly notify the bailor of any proceedings adverse to the latter's interest in the thing bailed which may excuse the bailee from delivering it.

A caveat is that 37 O.S.1981, § 542, operative Jan. 1, 1981, provides for notice of the hearing held concerning seized alcoholic beverages upon which taxes have not been paid. This section makes no mention of other alcoholic beverages subject to seizure under the Act.

**26.** *Cf. Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), (where a liquor licensee petitioned for suppression and return of certain properties seized by I.R.S. agents. The Supreme Court held that "where Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various rules apply.")

U.S.C.A. Const. Amend. 4, provides:
The right of the people to be sure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**27.** *Raymer v. City of Tulsa,* 595 P.2d 810 (Okl. Cr.1979).

**28.** Such inquiry would have involved resolution by the lower court of evidentiary matters including, *inter alia,* whether there was probable cause and ample opportunity to obtain a warrant prior to search and seizure, *see e.g., Trupiano v. U.S.,* 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); whether the liquor seized was within plain view, *see e.g., Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); whether the warrantless search and seizure conducted was reasonably incident to arrest, *see e.g., Seher v. State,* 554 P.2d 66 (Okl.Cr.1976).

We observe that the scope of warrantless search and seizure of premises which are licensed under the Act (*e.g.* retail package liquor stores), is arguably greater, since in accepting a license under the Act, the licensee consents to warrantless inspections or searches of the licensed premises. *See* Section 539(a), *supra;* 37 O.S.1981, § 546; *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *Oklahoma Alcoholic Beverage and Con. Bd. v. McCulley,* 377 P.2d 568 (Okl.1962).

tutional. These provisions are necessary to effectuate the valid purpose of the legislature to protect the health and safety of the public and are means reasonably adapted to accomplish that objective. Further, in *State v. Parham*,[29] after noting the broad powers granted to the States to regulate alcoholic beverages, we said, at page 151:

It has also been recognized in this jurisdiction that where a statute is enacted by virtue of the police power of the State for the public welfare, as is the Oklahoma Alcoholic Beverage Control Act, and it is impossible or impracticable to provide adequate standards without defeating the legislative objective, the legislation is constitutional without such standards.

Such is the case here.

In summary the decision of the District Court must fall. The situation makes seizure of alcoholic beverages in the violator's possession the only practical method of enforcement. Fourth Amendment standards determine the reasonableness of any search and seizure under the provisions in question. Also, under our own prior rulings, a statute such as Section 539 is not nullified by lack of specific provisions for notice to the parties. Such provisions, whether expressly stated or not, are inherent in the wording of the statute. Lastly, the case here comes within the narrow guidelines set forth in *Fuentes* allowing for a seizure prior to a judicial hearing on disposition of the property seized.

In reviewing our present holding we note two cases: *Mitchell v. W.T. Grant*,[30] wherein the United States Supreme Court said:

The requirements of due process "are not technical, nor is any particular form of procedure necessary." ... Due process of law guarantees "no particular form of procedure; it protects substantial rights." ... "The very nature of due process ne-

gates any concept of inflexible procedures universally applicable to every imaginable situation." (citations omitted)

and, *Spearman v. Williams*,[31] which in this Court's syllabus, the following principle was stated:

The Oklahoma Constitution vests in the Legislature the supreme power to enact laws to meet the needs of the State, and its acts should be upheld unless plainly and clearly within the express prohibitions and limitations fixed by the Constitution. There is a presumption that the act is constitutional.

In the instant case, the presumption has not been overcome.

The decision of the District Court is reversed and the cause remanded to that tribunal for action consistent with this opinion.

REVERSED AND REMANDED.

BARNES, C.J., and IRWIN, HODGES, DOOLIN, HARGRAVE and WILSON, JJ., concur.

SIMMS, V.C.J., concurs in part, dissents in part.

LAVENDER, J., dissents.

OPALA, J., concurs in parts I, II, IV and concurs in result in part III.

---

**29.** 412 P.2d 142 (Okl.1966).

**30.** 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

**31.** 415 P.2d 597 (Okl.1966).