Decided June 23, 1989

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

CARMEN LG. BORJA, ) CIVIL ACTION NO. 88-203
 )
 Plaintiff, )
 )
 vs. ) ORDER
 )
LOURDES RANGAMAR, et al., )
 )
 Defendants. )
_____)

## FACTS

This case boils down to a dispute as to the boundary line between Lots 1930 and 1933. The southern portion of Lot 1930, which abuts Lot 1933, is owned by plaintiff Carmen LG. Borja. Lot 1933 is public land administered by defendant Marianas Public Land Corportion (MPLC).

In order to fully understand the relationship of the parties in this case and the nature of the boundary between the two lots, it is necessary to begin with the title determination proceedings concerning Lots 1930 and 1933 which were conducted by the Land Title Officer on Saipan in October of 1952.

On October 7, 1952 Determination of Ownership No. 397 was issued, declaring that Lot 1933 was the property of the heirs of Francisca Somarang represented by Clara Taman Camacho (Camacho) as land trustee. On the same date, Determination of

**892**

Ownership No. 395 was issued, concluding that Lot 1930 was the property of the heirs of Fabiana Rapugao represented by Donisia Limes as land trustee. Each of the Title Determinations was duly recorded.

In September of 1954, Clara Taman Camacho, as representative of the heirs of Francisca Somarang, entered into an "Agreement to Exchange Lands" with the Government of the Trust Territory whereby Camacho agreed to exchange Lot 1933 for Lot 369 in Chalan Kanoa. On April 12, 1956 the Government granted Lot 369 to Camacho. Subsequently, on April 24, 1956, Camacho executed a Quitclaim Deed transferring all right, title, and interest of the heirs of Francisca Somarang in Lot 1933 to the Government. The Trust Territory Government was the predecessor in interest to MPLC, which now holds title to Lot 1933.

On September 13, 1969 a Special Warranty Deed was executed between the heirs of Fabiana Rapugao and Olympio T. Borja, the late husband of plaintiff, for the southern portion of Lot 1930. As one grantor was omitted from this deed, a Corrected Special Warranty Deed was executed on March 15, 1970 whereby the heirs of Fabiana Rapugao conveyed to Borja "a portion of the SW $1/2$ of Lot 1930...."

In 1976 the Trust Territory Government contracted with Asia Mapping, Inc. to survey various parcels of land on Saipan including Lots 1930 and 1933. This survey resulted in Sketch No. 15 which sets forth the boundaries for, inter alia, Lots

**893**

1930 and 1933. Survey markers were placed marking the boundaries between the two parcels.

On July 16, 1971 Civil Action No. 994 was filed in the Trial Division of the High Court for the Trust Territory. In this action the Trust Territory Government sought to eject Camacho from Lot 1933. On July 20, 1976, Civil Action No. 193-76 was filed by Camacho to quiet title in Lot 1933. These two cases were consolidated for trial. Judgment was entered on April 16, 1979 whereby the court determined, inter alia, that "[t]he Trust Territory Government is the owner of Lot 1933 and the defendant (Clara T. Camacho) and intervenors have no right, title, or interest thereto and they shall vacate and quit the premises." This Judgment was amended on June 19, 1979 for the purpose of addressing issues which were not discussed in the original Judgment. However, the amended Judgment clearly stated that the Government was the owner of Lot 1933 and Clara T. Camacho had no right thereto. This amended Judgment was subsequently affirmed on appeal on November 23, 1982.

### VIABILITY OF THE CAMACHO AND RANGAMAR CLAIMS

Defendant Lourdes Rangamar is the daughter of Clara T. Camacho. Defendant Luis Rangamar is Lourdes' husband. The Rangamars are currently living on land which they contend is part of Lot 1933. Plaintiff alleges that the Rangamars are actually residing on a portion of Lot 1930.

Pursuant to the amended Judgment entered in High Court Civil Action No. 994, consolidated with No. 193-76, there can

894

be no doubt that defendants Clara T. Camacho, Lourdes Rangamar and Luis Rangamar currently have no interest in Lot 1933. Indeed the Rangamars actually contend that they are residing on public land. Thus, they have no standing to assert a boundary line for property they don't even own.[1] Oklahoma Alcohol Beverage Control Board v. Parkhill Restaurants, Inc., 669 P.2d 265, 268 (Okl. 1983). (A party must assert his legal rights in interest and cannot rest his claim on the rights or interest of third parties.)

## MPLC'S CLAIM - WHAT IS IT?

Equally clear from Civil Action No. 994 is that MPLC, as successor in interest to the Trust Territory Government's interest in Lot 1933, currently has title to Lot 1933. As such, any dispute regarding the boundary between Lots 1930 and 1933 must be between plaintiff Borja and defendant MPLC.

Borja seeks to quiet title as to the boundary between Lots 1930 and 1933 based upon Asia Mapping Sketch No. 15. Sketch No. 15 was commissioned by MPLC's predecessor in interest and MPLC has "deferred" to this map as defining the

---

[1] On the day of the hearing on plaintiff's motion for summary judgment, the defendants submitted to the court an agreement whereby MPLC would grant its interest in lot 1933 to the defendants. A perusal of the agreement indicates: (1) Title to lot 1933 is still unequivocally in MPLC; and (2) certain conditions and events must occur before any transfer of MPLC's interest to the defendants will transpire. As pointed out by plaintiff's counsel, the agreement is akin to "an agreement to agree."

**895**

true boundary between Lots 1930 and 1933 for the past 13 years. Pursuant to certain claims by Camacho, MPLC now contends that it no longer defers to Sketch No. 15, but it "has no special reason to believe that Asia Mapping Sketch No. 15 is correct or incorrect." (Declaration of Jesus Sn. Cabrera). Thus, MPLC does not actually dispute plaintiff's contention as to the location of the boundary between Lots 1930 and 1933. MPLC's only real claim is that it does not know where the boundary is.[2] The question now before the court is whether such an elastic position is sufficient to create a genuine issue of fact.

## SUMMARY JUDGMENT STANDARD

A summary judgment will be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Com.R.Civ.Pro. Rule 56; Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2050, 2510, (1986). To withstand a motion for summary judgment, the non-moving party must show that there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. Id. at 2511.

---

[2] This claim has a hollow ring since its predecessor in title established the boundary line which the plaintiff accepts. Although Asia Mapping Sketch No. 15 was not an exhibit in Civil Action 193-76 and 994, it is evident from the court files for those cases, Asia Mapping was an instrumental government consultant/contractor so that the Government could put to rest conflicting p... , claims as well as boundary disputes.

896

To create a question of fact, the adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied 104 S.Ct. 392 (1983). In determining whether a genuine issue of fact exists, the court can only consider evidence which would be admissible and have probative force at trial. Colan v. Cutler-Hammer, Inc., 812 F.2d 357 (7th Cir. 1987).

It is a general rule of summary judgment procedure that denying the allegations of affidavits supporting a motion for summary judgment does not, ipso facto, create a genuine issue of material fact. Fifty Associates v. Prudential Insurance Co. of America, 450 F.2d 1007, 1010 (9th Cir. 1971). Mere denials unaccompanied by statements of any facts which would be admissible in evidence at a hearing, are not sufficient to raise a genuine issue of fact. Piantadosi v. Loew's Inc., 137 F.2d 534, 536 (9th Cir. 1943).

The existence of a genuine issue of fact is predicated upon the existence of a viable legal theory. Blodgett v. Santa Cruz County, 553 F.Supp. 1090, 1094 (D.C. Cal), affirmed 698 F.2d 368 (9th Cir. 1982).

## THE VALUE OF SKETCH NO. 15

Asia Mapping Sketch No. 15 was commissioned by the Trust Territory Government in order to delineate boundary lines and determine the location of various Lots in the Garapan area.

**897**

Certain lot boundaries on the map are marked as in dispute, however, the boundary between Lots 1930 and 1933 is not so labelled.

Sketch No. 15 is the original, and only, survey of Lots 1930 and 1933.[3] It was commissioned by the government and survey monuments were set. Further, this map was relied upon by the government since its inception.

 Original government survey markers control the boundary. Palmer v. Fitzpatrick, 557 P.2d 203, 205 (Idaho 1976). The location of corners and lines established by government survey is conclusive. Stephens v. Hurly, 563 P.2d 546, 551 (Mont. 1977). A fundamental principle of the law of surveying is that absolute permanency is attached to official public land surveys. Pointer v. Johnson, 695 P.2d 399, 403 (Idaho 1985).

In this case, there is only one government survey of the lots in question. That survey is contained in Asia Mapping Sketch No. 15.

---

[3] The defendants, Rangamars and Camacho, contest the appellation "original survey" and assert that Sketch No. 15, if anything, is a resurvey. They have previously been determined to have no standing to object to the boundary line and even if they eventually become owners of lot 1933, they take no better title than their predecessor (MPLC). From the affidavits of Jesus Cabrera and Juan I. Castro, it is clear: (1) The Government (MPLC) does not assert Sketch No. 15 is not an original survey; (2) The purpose of Sketch No. 15 was to establish boundary lines; and (3) Sketch No. 15 is the only survey in existence for lots 1930 and 1933.

## WHERE'S THE GENUINE ISSUE OF FACT?

To withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." To survive a motion for summary judgment, the non-moving party need only present evidence from which a trier of fact might return a verdict in his favor. Anderson, supra, 106 S.Ct. at 2511.

The non-moving party may not merely state that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim. Anderson, supra, 106 S.Ct. at 2514. Instead, it must produce at least some significant probative evidence in opposition to the motion. First National Bank v. Cities Service Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 1593 (1968).

Summary judgment must be granted unless there is a dispute as to a genuine issue of material fact. Anderson, supra, 106 S.Ct. at 2511. A "dispute" entails some conflict of claims or rights. Black's Law Dictionary. In this case, there appears to be no real dispute between Borja and MPLC. Borja contends that Sketch No. 15 accurately delineates the boundary between Lots 1930 and 1933. MPLC merely asserts that this may or may not be true. Absent any probative evidence tending to support a claim, the mere assertions of a dispute will not

**899**

preclude summary judgment. U.S. Nuclear Regulatory Commission v. Radiation Technology, Inc., 510 F.Supp. 1266, 1293 (D.C. N.J. 1981). Here, MPLC has put forth nothing to support any assertation that there is actually a dispute with Borja.

What MPLC does is attempt to claim that, hypothetically, there may be a dispute as to the boundary between the lots in question. However, where the only "fact" in dispute on summary judgment is a purely hypothetical question, the answer to which would necessarily rest on speculation, a trial to resolve such an issue would be an exercise in futility. S.W. Neighborhood Assembly v. Eckard, 445 F.Supp. 1195, 1202 (D.C.D.C. 1978). In this case, MPLC has put forth no significant probative evidence which would preclude issuance of a summary judgment; all MPLC has put forth is a question as to where the boundary is. MPLC does not, nor can it, point to a line on the ground as being the boundary line - other than the boundary line established by its predecessor in interest by Sketch No. 15. MPLC's hypothetical that there may be a dispute is not enough to create a genuine issue of fact and, therefore summary judgment is appropriate.

Dated at Saipan, MP, this 23 day of June, 1989.

_____
Robert A. Hefner, Presiding Judge

900